531 A.2d 22

**Doris LICHTENFELS, Grace Doppelheurer, Samuel F. Morrison, Maxine Beye, Lois Miller, Martha Greene, David L. Morrison, and Raymond Morrison, Appellees,**

v.

**BRIDGEVIEW COAL COMPANY and Delta Mining, Inc.**

**Appeal of DELTA MINING, INC.**

Superior Court of Pennsylvania.

Argued April 29, 1987.

Filed Sept. 18, 1987.

Petition for Allowance of Appeal Denied Feb. 16, 1988.

Richard J. Amrhein, Washington, for appellant.

George L. Hallal, Uniontown, for appellees.

Before CIRILLO, President Judge, and MONTEMURO and TAMILIA, JJ.

MONTEMURO, Judge:

Appellant challenges an order of the Fayette County Court of Common Pleas that denied appellant's exceptions to an order directing the prothonotary to pay to appellees the balance of a fund held in escrow. The fund contained a portion of the proceeds from a partition sale. We affirm.

The trial court in this case made the following findings of fact that are amply supported by the record. Appellees are eight of the ten common owners of the 150–acre tract of land that was the subject of the partition sale. On January 10, 1979, appellees, along with one of the other two owners, entered into a lease agreement with appellant Delta Mining Company ("Delta"). The lease, signed by the nine tenants in common, demised the land together with all rights necessary for the proper mining of the coal thereunder, including rights-of-way for transportation and haulage. The agreement provided for the payment of royalties to the lessors based on tonnage of coal mined. The lease did not convey any interest in the coal itself because the coal was not owned by the surface owners. The coal owner had indepen-

dently contracted to lease a 75% interest in the coal to Delta, with the remaining 25% leased to the Bridgeview Coal Company ("Bridgeview").

Delta had originally approached the ten owners and sought to enter an agreement to strip-mine the coal beneath the 150–acre tract. In 1979 Delta obtained the signatures of nine of the ten owners on a lease agreement. The remaining owner of the undivided $\frac{1}{10}$ interest, James Morrison, offered to sign the lease if he would receive $.10 per ton more than that offered to the other owners. Delta refused that offer. Mr. Morrison then agreed to sign the lease if Delta would pay him $2,000 immediately and treat it as an advanced royalty. Delta turned down this second proposal. Delta then refused Mr. Morrison's third and final offer of a sale for $30,000 of his undivided $\frac{1}{10}$th interest in the surface. In 1982 Mr. Morrison conveyed his $\frac{1}{10}$th interest to Bridgeview. At about the same time, Mildred Hill, one of the nine who had signed the 1979 lease agreement, also conveyed her $\frac{1}{10}$th interest to Bridgeview.

Delta, with full knowledge that all owners of the surface had not signed the lease agreement, made expenditures in anticipation of strip mining the tract. The Department of Environmental Resources (DER) advised Delta that in order to get the necessary permit for strip mining, Delta needed the consent of all surface owners.

Because it could not get the consent of all the surface owners, Delta proposed that the owners of the $\frac{8}{10}$th interest in the land, the appellees herein, institute an action in partition against Bridgeview to obtain the remaining $\frac{2}{10}$th interest. N.T., February 13, 1986, at 62. Pursuant to that proposal, Delta and the appellees signed an agreement, dated January 6, 1983, to supplement the January 1979 lease agreement. The 1983 agreement provided that appellees, "at their discretion," would determine the amount they would offer for Bridgeview's $\frac{2}{10}$th interest. Delta agreed to advance 75% of the sale price up to $75,000. The payment would be treated as advanced royalties. Delta also agreed to pay $1,000 in legal fees incurred by appellees

in bringing the partition action. This payment would not be recoverable by Delta. In the event that appellees did not prevail at the partition proceeding, the parties agreed that the 1983 agreement would be void.

The trial court conducted the private partition sale, which was confined to the parties to this action. In addition to the attorneys for Bridgeview and the appellees, Delta officials and their attorney were present. Bridgeview made a final bid of $500,000 for the tract. Before the court accepted the final bid, the representative of the ⁸/₁₀th owners and Delta were given the opportunity to discuss their respective positions. Neither party made an additional bid. The court accepted Bridgeview's bid, and thereafter, 100% ownership of the property vested in Bridgeview.

At a hearing held subsequent to the partition sale, the trial court found that because the 1979 lease agreement had been assented to by nine of the ten owners of the property, the agreement was divested by the partition action. This Court affirmed that finding but stated that "[a]ny rights Delta may have against the Lessors are not subject to review on this appeal," *Lichtenfels v. Bridgeview Coal Co.*, 344 Pa.Super. 257 at 269, 496 A.2d 782 at 789 (1985). After the sale, $194,000, nearly ½ of Bridgeview's purchase price for the ⁸/₁₀th interest, had been placed in escrow pending the resolution of the parties' claims to the fund. With our affirmation that the lease agreement was void, appellees filed a petition for rule to show cause why the escrowed proceeds, plus accrued interest, should not be distributed to them. Delta responded that they were entitled to the fund as compensation for the loss of their leasehold interest. The trial court disagreed with Delta and ordered that the balance of the proceeds be paid to appellees. Delta took exception to the order. Their exceptions were dismissed, and judgment was entered in appellees favor. Delta appealed.

Delta claims on appeal that it is entitled to the escrowed proceeds because (1) appellees breached their covenant of quiet enjoyment and "the lease in general" by selling their

interest at the partition sale which thereby divested Delta of its leasehold interest,[1] or, in the alternative, (2) appellees have been unjustly enriched because expenditures Delta made in anticipation of mining increased the value of the tract at the partition sale. We find no merit in either of Delta's claims.

▉ There is an implied covenant of quiet enjoyment in every lease of real property. *Pollock v. Morelli,* 245 Pa.Super. 388, 392–93, 369 A.2d 458, 460 (1976). The covenant is between lessor and lessee. *Id.* It is breached when the lessee's possession is impaired either by acts of the lessor or those acting under the lessor or by the actions of a holder of a superior title. *Id.* Any "wrongful act" of the lessor that interferes with the lessee's possession, in whole or in part, is a breach of the covenant of quiet enjoyment. *Id. See also Kelly v. Miller,* 249 Pa. 314, 317, 94 A. 1055 (1915).

In the case before us, appellant argues that appellees breached the covenant of quiet enjoyment because they failed to outbid Bridgeview at the private partition sale. Instead, they sold their ⁵⁄₁₀th interest to Bridgeview, which resulted in the extinguishment of the 1979 lease agreement between Delta and the appellees.

▉ Delta's claim for breach must fail because there was no wrongful act by the appellee-lessors. The appellees did not act unilaterally when they instituted the action in partition. Rather, because the consent of all the surface owners was not forthcoming, Delta had urged the appellees to

1. Although in *Lichtenfels v. Bridgeview Coal Co.,* 344 Pa.Super. 257, 267–68, 496 A.2d 782, 788 (1985), we did conclude that in its 1979 agreement with appellees, Delta "in effect" had obtained a "license to strip the coal," we nonetheless discussed Delta's interest in terms of a lease. To avoid any further confusion and for the sake of argument, we will entertain Delta's claim based on the breach of the covenant of quiet enjoyment. Such a covenant would only have bearing on the agreement if it were a lease and not a mere license. *See Sparrow v. Airport Parking Co. of America,* 221 Pa.Super. 32, 289 A.2d 87 (1972) (a license, unlike a lease, does not bestow upon the licensee the right to exercise the exclusive possession and enjoyment for the term specified).

move for partition. N.T., February 13, 1986, at 62. Delta is now estopped from objecting to the outcome of the partition sale.

To facilitate the partition proceedings, Delta and the appellees entered into an agreement that outlined each party's obligations with respect to the proceedings. The January 1983 agreement provided that appellees would, "at their discretion," determine the amount they would bid for Bridgeview's interest. Appellees did not agree to purchase the interest at any cost. Nor did appellees agree to pay Delta damages if appellees were unsuccessful at the partition sale. Rather, the parties agreed that in the event that appellees did not prevail at the sale, the January 1983 agreement would be void. Appellees did not engage in any wrongful act that could form the basis of a claim for breach of the covenant of quiet enjoyment. Appellees acted in good faith at the sale. They forced the bid to the level Delta agreed to pay. Appellees were under no obligation to purchase Bridgeview's interest.

The partition sale not only failed to accomplish Delta's goal of placing the ownership of the entire tract in appellees' hands, it also divested Delta's leasehold interest. However, even without the divestment, the interest conveyed to Delta by the 1979 agreement had no value unless Delta could obtain DER permission to strip mine the property. Without the consent of all the surface owners, Delta could not get that permission. Therefore, the performances promised under the contract were frustrated not by the partition sale and the subsequent divestment, but by Delta's inability to obtain a DER permit. In fact, it was in an attempt to salvage the 1979 agreement that Delta urged appellees to initiate the partition sale. The sale was a final effort to bring about the conditions necessary to enable performance of the agreement.

Because events beyond the parties' control [2] frustrated the purpose of the 1979 agreement, the situation is

**2.** It is possible that some fault for the frustration of the contract's purpose should be placed upon Delta. It entered into the agreement

governed by the doctrine of "frustration of contractual purpose," *see Alvino v. Carracio*, 400 Pa. 477, 162 A.2d 358 (1960)).[3] The doctrine holds that "[w]hen people enter into a contract which is dependent for the possibility of its performance on the continual availability of a specific thing, and that availability comes to an end by reason of circumstances beyond the control of the parties, the contract is prima facie regarded as dissolved." *Alvino v. Carracio, supra*, 400 Pa. at 482, 162 A.2d at 361 (quoting *Nitro Powder Co. v. Agency of Canadian Car & Foundry Co.*, 233 N.Y. 294, 297, 135 N.E. 507, 508 (1922) (Pound, J.)). *See also* Restatement (Second) of Contracts § 261 (1981) ("[w]here, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary"). Moreover, when impracticability excuses a party's duty to perform, it ends all contractual obligations under the contract. *See West v. Peoples First National Bank & Trust Co.*, 378 Pa. 275, 106 A.2d 427 (1954). *See also* Restatement (Second) of Contracts § 377 comment a (1981) ("in cases of impracticability or frustration the other party is also ordinarily relieved of any obligation of rendering the return performance that he has promised on the ground of failure of performance (§ 267)"). Because Delta could not obtain the necessary mining permit, Delta's promised performance of paying to the lessors royalties based on tonnage of coal mined was excused due to impractibility. Delta could not obtain the

with less than all the surface owners of the property, and refused the offers made by James Morrison, the tenth owner. " 'One tenant in common is without authority to bind his covenants by an agreement concerning the use or control, or affecting the title, of the joint property.' " *McCullough's Petition*, 275 Pa. 456, 458, 119 A. 585, 586 (1923) (quoting *Caveny v. Curtis*, 257 Pa. 575, 101 A. 853 (1917)).

**3.** The Restatement (Second) of Contracts refers to the doctrine of "frustration of contractual purpose" as the doctrine of "impracticability of performance." *See* Restatement (Second) of Contracts, Chapter 11, "Impracticability of Performance and Frustration of Purpose" (1981).

necessary mining permit. The lessors' promise to perform under the lease agreement was, therefore, also excused.

Nonetheless, Delta argues that appellees were unjustly enriched because the value of the land was increased by the leasehold interest. It is true that a party whose duty of performance is discharged due to impracticability "is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance," Restatement (Second) of Contracts § 377 (1981). We have, however, thoroughly reviewed the record in this case and find that Delta has failed to produce any evidence to support its claim for restitution. Appellees have not been unjustly enriched by any of Delta's actions, and Delta acted unreasonably if it relied on a lease agreement signed by less than all of the surface owners.

Delta did present evidence that it had incurred expenses in both applying for a mining permit and in exploring the site. Nevertheless, neither of these activities conferred any benefit on appellees. A party "cannot merely allege its own loss as the measure of recovery ...but instead must demonstrate that [the other party] has in fact been benefited," *Meehan v. Cheltenham Township*, 410 Pa. 446, 450, 189 A.2d 593, 595 (1963). Here, Delta took action in preparation for performance under the contract, but had not begun performance under the terms of the lease agreement. "[A] party's expenditures in preparation for performance that do not confer a benefit on the other party do not give rise to a restitution interest." Restatement (Second) of Contracts § 370 comment a (1981).[1] Moreover, any inference that could reasonably be drawn from Delta's assertion that the value of the property increased as a result of its exploration of the site is discounted by testimony from the February 13, 1986 hearing. It was common knowledge among area coal operators that the tract of land in question had coal deposits beneath its surface. *See* N.T. February 13, 1986, at 44, 60.

4. One of Delta's engineers, Douglas Kerin, testified that whenever the company considers engaging in a mining operation, expenses are incurred that are connected to engineering studies for the purpose of getting a mining permit. *See,* N.T., February 13, 1986, at 14.

Since appellant has failed to prove either that appellees breached the covenant of quiet enjoyment or that appellees have been unjustly enriched, we affirm the order of the trial court.

Order affirmed.