J. Carl KOHL, Appellant

v.

PNC BANK NATIONAL ASSOCI-
ATION, William C. Schmidt and
Marilyn F. Schmidt, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 29, 2003.

Filed Oct. 28, 2004.

Reargument Denied Jan. 5, 2005.

Thomas J. Mahoney, Bethlehem, for appellant.

Michael J. Donohue, Scranton, for appellees.

Before: DEL SOLE, President Judge, HUDOCK and TODD, JJ.

TODD, J.

¶ 1 J. Carl Kohl appeals the order entering judgment on the verdict following a nonjury trial in this ejectment and breach of lease action. In this case, we are asked to determine whether litigation which impairs a tenant's possessory interests in a leasehold, brought in bad faith by a landlord, constitutes a breach of the implied covenant of quiet enjoyment in the lease. While we conclude that such litigation may constitute a breach of this covenant, we find there was insufficient evidence to support a finding of bad faith in this case. We affirm in part, reverse in part, and remand.

¶ 2 Kohl is the fee simple owner of a 2.3–acre property in Monroe County, Pennsylvania. The land is improved by a building, originally constructed as a racquetball court. In 1979, Kohl entered into a "Ground Lease Agreement" for that property with Burke and Kohl, Inc., a Pennsylvania corporation. Following a series of intervening assignments, the lease was assigned to nominal Appellees William C. Schmidt and Marilyn F. Schmidt. In order to make commercial building improvements, in September 1990, the Schmidts obtained a loan for $800,000 from First Eastern Bank, now Appellee PNC Bank National Association[1] (the "Bank"), secured by a mortgage on the leasehold interest. In addition, Kohl, the Schmidts, and the Bank all signed a "Nondisturbance and Attornment Agreement," which further secured the Bank's rights.

¶ 3 Following the Schmidts' default on the loan, on October 8, 1992, the Bank confessed judgment in ejectment against the Schmidts and took possession of the leasehold premises on that date. The Bank then filed a mortgage foreclosure action against the Schmidts, and, on January 15, 1993, a default judgment was entered in favor of the Bank and against the Schmidts. In addition to defaulting on the loan, the Schmidts were delinquent on property tax payments required under the lease. Around the time of the Bank's foreclosure and ejectment actions, Kohl filed his own complaint against the Schmidts, citing their failure to pay real estate taxes and seeking termination of the lease, damages for the unpaid taxes, and possession. Default judgment was entered in favor of Kohl and against the Schmidts in that action on January 8, 1993.

¶ 4 Later that year, on October 27, 1993, Kohl filed a declaratory judgment action seeking a determination that the Bank had no interest in the leasehold, asserting that Kohl had successfully terminated the lease prior to the Bank's succession to the interests of the Schmidts. The basis for this suit was Kohl's contention that the Schmidts' failure to pay taxes on the premises automatically terminated the lease *prior* to the Bank's succession. The trial court disagreed, however, and ultimately this Court held that the lease did not provide for automatic termination for a failure to pay taxes, and that the Bank's rights nonetheless were protected under the Nondisturbance and Attornment Agreement. *See Kohl v. First Eastern Bank*, No. 1127 Philadelphia 1996, unpublished memorandum (Pa.Super. filed Dec. 30, 1996) (hereinafter *"Kohl I"*). Kohl's appeals were exhausted on July 11, 1997.

¶ 5 On September 25, 1998, Kohl commenced the present action in ejectment for the Bank's failure to pay property taxes and for its abandonment of the property (Count I), and breach of contract for the Bank's failure to pay property taxes (Count II). In conjunction with this action, Kohl filed a *lis pendens* against the Bank's interest in the 2.3–acre parcel of land and the improvements thereon. The Bank counterclaimed for, *inter alia,* Kohl's breach of the lease's implied covenant of quiet enjoyment, citing Kohl's ongoing litigation concerning the leasehold, including an assertion that it was relieved of any obligation under the lease due to Kohl's breach of the covenant. On these points, the trial court noted:

The [Bank], after succeeding to the interest of its predecessor, has been unable to market the leasehold premises as a result of the litigation commenced by [Kohl], including the filing of the lis pendens.... The improvement on the

---

1. In 1994, PNC Bank National Association acquired First Eastern Bank by merger.

leasehold premises has deteriorated: been subject to vandalism, and is no longer secure from entry of vandals or other persons. The premises has not been utilized in any way for approximately seven years. The leased premises as presently constituted has no rental value. The real estate taxes on the leasehold premises, identified as Tax No. 17/112536, have not been paid for the years 1993 to date. The tax delinquency through the end of 2001 amounts to $262,011.78. The leasehold premises was scheduled for a tax sale. Although this Court denied landowner's Motion to preclude the sale (6308 Civil 1998), no bid was received for the property at the time of the sale. Therefore, a judicial sale of the premises has been scheduled for April 16, 2003.

(Trial Court Opinion, 4/16/03, at 4–5 (citations omitted).)

¶ 6 Following a bench trial, the court issued a verdict dated December 4, 2002 finding: (1) in favor of Kohl with respect to his ejectment claim; (2) in favor of the Bank with respect to Kohl's breach of contract claim; and (3) in favor of Kohl with respect to the Bank's counterclaim for breach of the implied covenant of quiet enjoyment.[2] These findings flowed from the trial court's determination that the Bank had abandoned the property, and therefore Kohl was entitled to judgment in his ejectment action; however, the court further determined that, as Kohl had breached the covenant of quiet enjoyment through "incessant" bad faith litigation concerning rights to the leasehold, no

award of damages was due on Kohl's breach of contract claim.[3] Kohl's post-trial motions were denied, and this timely appeal followed.

¶ 7 Kohl now presents the following questions for our review:

1) Did the court below err in failing to award damages to [Kohl] in the amount of unpaid real estate taxes based upon [the Bank's] breach of contract where the uncontroverted evidence and the law of the case demonstrates that the bank was a successor in interest to the prior tenant under the lease and the case requires the tenant to pay real estate taxes?

2) Whether the trial court's finding that [Kohl] breached the covenant of [quiet enjoyment] was legally proper and supported by competent evidence?

3) Whether the alleged breach of the covenant of quiet enjoyment on the part of [Kohl] justified [the Bank's] failure to pay the real estate taxes on the subject property for all of the years that it was a tenant in possession?

4) Whether the trial court erred in failing to award damages for the neglect and waste committed on the property since the bank became tenant?

5) Whether the trial court improperly excluded evidence regarding [Kohl's] damages, specifically evidence regarding the harm to his fee interest

**2.** Ultimately, neither Kohl nor the Bank sought any relief from the Schmidts, and the Schmidts have not filed any briefs in this appeal.

**3.** Although the trial court found that Kohl breached the implied covenant of quiet enjoyment and that the Bank was relieved of its

responsibilities under the lease as a result, for reasons unexplained in the record, the trial court found in favor of Kohl on the Bank's counterclaim for breach of that covenant. As this finding is not challenged by the Bank on appeal, however, we need not review it further.

in the entire parcel, not just the parcel subject to the Ground Lease?

(Appellant's Brief at 5.)

¶ 8 Our standard of review in nonjury cases is well-established and is limited to:

a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Anderson v. Litke Family Ltd. P'ship,* 748 A.2d 737, 738–39 (Pa.Super.2000).

¶ 9 The first three issues Kohl raises on appeal are aspects of his general assertion that the trial court erred in concluding that Kohl breached the covenant of quiet enjoyment, and by doing so obviated the Bank's obligations under the lease. Underlying the trial court's analysis was its conclusion that the lawsuits commenced by Kohl concerning the leasehold against the Bank were pursued in bad faith, a conclusion which Kohl contests. The trial court explained:

[Kohl] argues that the lawsuit was not a wrongful act, but rather, "[Kohl] was exercising a right he specifically reserved under the lease by bringing lawsuits following the bank's breach of the lease for failure to pay taxes and for abandoning the property." We cannot find that any such right was being asserted, as the litigation began only a few months after the bank took possession. Also, the judgment of the Superior Court in prior litigation between the parties plainly states that Kohl was seeking a declaratory judgment for a determination that [the Bank's] lease was void because it was terminated prior to the Bank's succession. In view of the fact that the litigation was incessant, unrelated to the Bank's performance, and virtually meritless, we think it is reasonable to infer bad faith on the part of [Kohl], and thus, a wrongful act.

(Trial Court Opinion, 4/16/03, at 6.)

¶ 10 For the reasons discussed below, we conclude that litigation by a landlord/lessor which substantially impairs a lessee's possessory interests can constitute a breach of the covenant of quiet enjoyment where such litigation is pursued in bad faith, maliciously, or without probable cause. We further conclude, however, that the trial court's finding that the litigation by Kohl was brought in bad faith is not supported by the record. Accordingly, we reverse the trial court's judgment in favor of the Bank on Kohl's breach of contract claim.

¶ 11 There is an implied covenant of quiet enjoyment in every lease of real property in this Commonwealth. *Branish v. NHP Property Mgmt., Inc.,* 694 A.2d 1106, 1107 (Pa.Super.1997); *Lichtenfels v. Bridgeview Coal Co.,* 366 Pa.Super. 304, 309, 531 A.2d 22, 25 (1987). The covenant is between the lessor and the lessee. *Branish,* 694 A.2d at 1107. Any "wrongful act of the lessor that interferes with the lessee's possession, in whole or in part, is a breach of the covenant of quiet enjoyment." *Branish,* 694 A.2d at 1107; *Lichtenfels,* 366 Pa.Super. at 309, 531 A.2d at 25.

¶ 12 To constitute a breach, the "impairment of the lessee's possession need not be total, but the utility of the premises must be substantially decreased

by the landlord's interference with a right or privilege which is necessary to the enjoyment of the premises." *Checker Oil Co. of Delaware, Inc. v. Harold H. Hogg, Inc.*, 251 Pa.Super. 351, 358, 380 A.2d 815, 819 (1977); *cf. Rittenhouse v. Barclay White Inc.*, 425 Pa.Super. 501, 506, 625 A.2d 1208, 1211 (1993) ("actual or constructive eviction is required before such a breach will be found"). The landlord must have "so substantially altered some essential features of the premises as to render the property unsuitable for the purpose for which it was leased." *Pollock v. Morelli*, 245 Pa.Super. 388, 393, 369 A.2d 458, 460 (1976).

¶ 13 There is no question that the covenant is breached when a tenant is actually evicted. *See, e.g., Minnich v. Kauffman*, 265 Pa. 321, 108 A. 597 (1919) (landlord breached covenant by locking up premises and denying access to tenants); *2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies of Greater Philadelphia*, 507 Pa. 166, 489 A.2d 733 (1985) (landlord breached new tenant's covenant of quiet enjoyment by signing agreement to extend lease of holdover tenant for space previously leased to new tenant). It is equally clear, however, that the covenant extends to *constructive* eviction—actions which do not oust the tenant, but which substantially impair a tenant's possession. *See, e.g., Branish, supra*, 694 A.2d 1106 (Pa.Super.1997) (landlord's "wrongful" act of sending tenant "no trespassing" letter indicating that tenant's boyfriend was no longer permitted on premises and that tenant would be evicted if terms of letter were violated—which landlord issued after boyfriend entered tenant's apartment uninvited and caused disturbance and damages—breached implied covenant of quiet enjoyment and infringed tenant's statutory right to invite social guests to her apart-

ment); *Pollock, supra* (construction of "mini mall" surrounding tenant's dry cleaning store which made store less visible and accessible was breach of covenant of quiet enjoyment as it substantially decreased the utility of tenant's premises); *cf. Rittenhouse, supra* (lessor did not breach its covenant of quiet enjoyment by failing to obtain multiple occupancy permit for premises, even though lessee's occupancy of premises was in violation of local building code; lessee was neither evicted nor was its possession impaired and, at time of lessee's termination of lease agreement, township had agreed not to pursue building code violations).

¶ 14 This approach is consistent with Section 4.3 of the Restatement (Second) of Property, "Existence of or Eviction by Paramount Title After Entry by Tenant." [4] This section, which "has developed in the caselaw in the analytical framework of express or implied covenants of quiet enjoyment", *id.* § 4.3 cmt. b, provides:

> Except to the extent the parties to a lease validly agree otherwise, after the tenant enters into possession there is no breach of the landlord's obligations because of the existence of a paramount title, but there is a breach of his obligations if there is an eviction by a paramount title, if the eviction deprives the tenant of the use contemplated by the parties.

Rest. (Second) of Property § 4.3. Under this section, while a breach of the covenant occurs where a tenant is ousted from possession, *see id.* § 4.3 cmt. d, a breach equally occurs where, as the phrase is used in Pennsylvania caselaw, a tenant is constructively evicted: "Where the tenant has not been ousted from possession by the assertion of the paramount title but the assertion prevents the use contemplated

---

4. See, however, our limitation discussed *infra* note 8.

by the parties, the tenant has been evicted and the rule of this section is applicable." *Id.*

¶ 15 In the present case, there is no dispute that the Bank was not evicted from the leasehold premises at any time. The Bank argues, and the trial court agreed,[5] however, that the Bank was constructively evicted in light of Kohl's bad faith litigation affecting the leasehold.

¶ 16 Our research has disclosed only one reported case from the courts of this Commonwealth touching on the issue of whether litigation affecting a leasehold might itself constitute a breach of the covenant of quiet enjoyment.[6] In *Raker v. G.C. Murphy Co.*, 358 Pa. 339, 58 A.2d 18 (1948), the appellants were heirs to an estate which included property on which the appellee held a business lease. Citing the covenant of quiet enjoyment in the lease, our Supreme Court disallowed the heirs' attempt to free the property of the lease by purchasing a paramount mortgage on the property and foreclosing on it:

> Since the Raker heirs could not, prior to their acquisition of the mortgage, have disaffirmed the lease and evicted the tenant, they could not accomplish that same result by the transparent de-

vice of acquiring the mortgage, foreclosing it, buying in the property, and then claiming that their rights were paramount to those of the lessee because of the original priority of the mortgage over the lease in point of time. That all the proceedings they instituted were designed for the sole purpose of freeing themselves from the Murphy Company lease is so obvious as to preclude the necessity of discussion. Having paid off the mortgage to the Bank there could have been no other reason for their failure to have it cancelled and satisfied of record instead of taking it over by way of assignment and then foreclosing it against themselves. The learned Judge in the court below found as a fact that they 'requested and obtained the assignment of the Bank's mortgage and prosecuted the foreclosure proceedings intending to invalidate this lease,' and added that 'one would have to be quite naive to conclude otherwise.'

*Id.* at 343, 58 A.2d at 19–20. The Court held that "neither law nor equity will give countenance to such an attempt but will protect the right of the tenant to retain undisturbed possession for the term of the lease." *Id.* at 343–43, 58 A.2d at 20. Ac-

---

5. The trial court found that "[a] lis pendens indexed against a commercial property is an effective death knell." (Findings of Fact, Conclusions of Law, and Verdict, 12/4/02, at 7.) It later added:

> In essence, this Court determined that banks are generally in the business of selling their interests in leaseholds, and, that the litigation impaired this right. While we agree that the effect on the Bank's *physical* possession was slight, the litigation paralyzed the bank's *constructive* possession, or, the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. *Black's Law Dictionary,* fifth Ed., 1979.

(Trial Court Opinion, 4/16/03, at 5–6 (emphasis original).)

6. One other case bears mention. In *Derrickheim Co. v. Brown*, 305 Pa.Super. 173, 451 A.2d 477 (1982), this Court stated that "[u]nder normal landlord and tenant law, a lessor's covenants of title and quiet enjoyment are not breached by the mere existence of a cloud on title. The breach does not occur until and unless the lessee is evicted by a holder of paramount title." *Id.* at 177, 451 A.2d at 479 (citing Restatement (Second) of Property § 4.3). These assertions are not elaborated upon further. Moreover, as that case concerned our interpretation of an oil and gas lease, which we conceded was not "controlled by normal landlord and tenant law," *id.,* the statements are arguably dicta.

cordingly, the Court affirmed the judgment against the heirs in their ejectment action. While in *Raker* the breach was found to block an ejectment action, whereas in the present case it is asserted, *inter alia,* as a defense to a breach of contract action, we nonetheless conclude that *Raker* stands for the proposition that *wrongful* litigation impairing a tenant's possessory interests can breach the covenant of quiet enjoyment.

¶ 17 The majority of cases from other jurisdictions which address this issue are in accord, and focus on whether the litigation was brought in bad faith, maliciously, or without probable cause. These cases hold either (1) that ejectment actions, or other suits for possession, brought in bad faith, maliciously, or without probable cause can constitute a breach of the covenant of quiet enjoyment, or (2) have left the issue open by finding that in the absence of malice related to the commencement of such proceedings, no breach has occurred. *See Roseneau Foods, Inc. v. Coleman,* 140 Mont. 572, 374 P.2d 87 (1962) (suit for possession by landlord does not constitute breach of covenant of quiet enjoyment unless suit was instituted maliciously and without cause); *Guntert v. City of Stockton,* 55 Cal.App.3d 131, 126 Cal.Rptr. 690 (1976) (arbitrary and unreasonable termination action against lessee constituted breach of covenant of quiet enjoyment, where, although lessee remained in possession, termination notices damaged his manufacturing business by creating state of uncertainty and prevented consummation of business contracts); *Kuiken v. Garrett,* 243 Iowa 785, 51 N.W.2d 149 (Iowa 1952) (fair inference of malice could be drawn from landlord's various forcible entry and detainer actions and notices to quit to support cause of action for breach of covenant of quiet en-

joyment by tenant even though tenant remained in possession); *Rahman v. Federal Mgmt. Co., Inc.,* 23 Mass.App.Ct. 701, 505 N.E.2d 548, 551 (1987) ("commencement of an eviction proceeding, at least where done, as here, without malice, does not violate the covenant of quiet enjoyment"); *D.M. Dev. Co. v. Osburn,* 51 Or.App. 207, 625 P.2d 157 (1981) ("The general rule is that the mere commencement of an action to evict does not constitute a breach of [the covenant of quiet enjoyment] at least in the absence of some showing that the lawsuit was groundless and maliciously brought." (citations omitted)). *But see Weisman v. Middleton,* 390 A.2d 996 (D.C.App.1978) (rejecting claim that landlord's suit for possession, where tenant remained in possession throughout, breached covenant of quiet enjoyment, even if suit was brought maliciously); *Bowers v. Sells,* 125 Ind.App. 324, 123 N.E.2d 194 (1954) (notice to quit, wrongfully given by landlord to tenant, constitutes constructive eviction if followed by surrender of premises).

¶ 18 In this context, limiting a finding of breach only with respect to litigation brought in bad faith, maliciously, or without probable cause also reflects a concern that a litigant's genuine attempt to seek legal redress not be hampered. Generally, it is the policy of this Commonwealth that litigants have free access to the courts. *See* Pa. Const. art. 1, § 11 ("All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.") Under only very limited circumstances are litigants subject to sanction or liability for bringing claims, even where they do not ultimately prevail.[7] Such

7. For example, litigants generally must pay their own counsel fees; an exception to this

strict hurdles reflect concern for the "chilling effect" the sanctions or liability may have on the bringing of legitimate claims for redress. *Cf. Thunberg v. Strause*, 545 Pa. 607, 615–616, 682 A.2d 295, 300 (1996) ("[T]he [counsel fees] statute serves not to punish all those who initiate legal actions which are not ultimately successful or which may seek to develop novel theories in the law. Such a rule would have an unnecessarily chilling effect on the right to bring suit for real legal harms suffered. Rather ... [t]he Judicial Code permits the award of attorneys' fees in an attempt to curb the filing of frivolous and otherwise improperly brought lawsuits." (citations omitted)).

¶ 19 Accordingly, we conclude that only where a determination can be made that litigation affecting a tenant's possessory interests is brought wrongfully can a breach of the covenant of quiet enjoyment be found. In line with *Raker, supra,* and following the reasoning of the majority view expressed in the cases cited above from other jurisdictions, we hold that a suit by a landlord which substantially impairs a tenant's possessory interest in a leasehold, brought in bad faith, mali-

ciously, or otherwise without probable cause and primarily for a purpose unrelated to seeking legal redress, constitutes a breach of the landlord's covenant of quiet enjoyment. We find this strikes a proper balance between a policy allowing substantially unfettered access to our courts with a tenant's rights to undisturbed possession. Moreover, such a rule is in keeping with the cases from this Commonwealth holding that *wrongful* acts of a landlord which substantially affect a tenant's possessory interests can constitute a breach of this covenant.[8] *See, e.g., Branish*, 694 A.2d at 1107; *Lichtenfels*, 366 Pa.Super. at 309, 531 A.2d at 25. We must now address whether Kohl's actions in this case meet this test.

¶ 20 Kohl brought two successive lawsuits challenging the Bank's possessory rights in the leasehold: the first, brought in 1993, asserted that the Bank had *no* interest in the leasehold; the second, brought in 1998, a year following the consummation of the prior litigation, was an ejectment action. We agree with the trial court that "banks are generally in the business of selling their interests in leaseholds, and, that the litigation impaired this

general rule is where it can be shown that the litigation was brought arbitrarily, vexatiously, or in bad faith. *See* 42 Pa.C.S.A. § 2503 (authorizing award of counsel fees where, *inter alia*, "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith"); *Dooley v. Rubin*, 422 Pa.Super. 57, 65, 618 A.2d 1014, 1018 (Pa.Super.1993) ("[T]he aim of [42 Pa. C.S.A. § 2503] is to sanction those who knowingly raise, in bad faith, frivolous claims which have no reasonable possibility of success, for the purpose of harassing, obstructing or delaying the opposing party."); *see also* Pa.R.A.P. 2744 (allowing award of counsel fees where an appeal is brought which is "frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious"). Also, before a litigant may be liable for the wrongful use of civil proceed-

ings under 42 Pa.C.S.A. § 8351, it must be shown not only that he was unsuccessful, but that he acted "in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." *See* 42 Pa.C.S.A. § 8351(a)(1).

8. For these reasons, to the degree it is in conflict, we disapprove the commentary to Section 4.3 of the Restatement (Second) of Property, which provides that the institution of foreclosure proceedings or the beginning of an action of ejectment does not constitute an eviction. *See id.* § 4.3 cmt. d. We conclude that the intention behind the bringing of such litigation is relevant to determining whether the covenant of quiet enjoyment is breached.

right" and that, while "the effect on the Bank's *physical* possession was slight, the litigation paralyzed the bank's *constructive* possession" (Trial Court Opinion, 4/16/03, at 5–6 (emphasis original)). Accordingly, we agree that Kohl's actions substantially interfered with the Bank's possessory interest in the leasehold. We cannot agree, however, that there was any evidence supporting the trial court's conclusion that Kohl's actions were brought in bad faith.

¶ 21 As an initial matter, we note that the trial court never made a factual finding that Kohl's actions constituted bad faith. (*See* Findings of Fact, Conclusions of Law, and Verdict, 12/4/02.) Indeed, it appears from our review of the record that the first time the trial court discussed Kohl's bad faith was in its opinion disposing of Kohl's post-trial motion. (*See* Trial Court Opinion, 4/16/03, at 6.) We question the trial court's reliance on factual findings not formally set forth, as such an approach denies litigants the ability to challenge such findings through post-trial motions. Even overlooking this, however, we conclude that the record fails to support the trial court's conclusion that Kohl's lawsuits, separately or in conjunction, were brought in bad faith.

¶ 22 We may briefly address the second lawsuit. Given that Kohl prevailed in his ejectment action below (a finding which is not challenged on appeal), it can hardly be claimed that the litigation was brought in bad faith, or without probable cause. Furthermore, the *lis pendens*, which the trial court concluded was an "effective death knell" when indexed against a commercial property (Findings of Fact, Conclusions of Law, and Verdict, 12/4/02, at 7), was lodged in conjunction with this successful suit, not the earlier unsuccessful one.

¶ 23 Although Kohl did not prevail in his first suit in 1993 against the Bank, we nevertheless can find no basis for the trial court's conclusion that this action was brought in bad faith. As we have discussed, in 1993, Kohl filed a declaratory judgment action asserting that he had successfully terminated his lease with the Schmidts prior to the Bank's succession to the interests of the Schmidts under the lease. Although on appeal this Court concluded that the lease did not automatically terminate as Kohl contended, and that the Bank's interests were additionally protected under the Nondisturbance and Attornment Agreement between the Bank and Kohl, *see Kohl I,* there was no allegation in that suit, or any suggestion by this Court on appeal, that Kohl's claim was brought in bad faith or without probable cause. In support of its bad faith conclusion, the trial court says merely: "In view of the fact that the litigation was incessant, unrelated to the Bank's performance, and virtually meritless, we think it is reasonable to infer bad faith on the part of the Plaintiff, and thus, a wrongful act." (Trial Court Opinion, 4/16/03, at 6.)

¶ 24 The litigation, spanning nearly 10 years, with a year separating the ending of the first lawsuit and the beginning of the second, might reasonably be termed incessant. As we have noted, however, it was resolved, in the case of the 1998 suit, in Kohl's favor and thus, in *toto,* the litigation clearly was not meritless. Furthermore, while the 1993 suit was resolved against Kohl, we can find no indications that it was brought maliciously or without probable cause. Finally, while the 1993 suit was unrelated to the Bank's performance, the 1998 suit clearly was. For these reasons, we cannot find the record supports the trial court's bad faith inference.

¶ 25 As a result, we conclude that the trial court's determination that Kohl breached the covenant of quiet enjoyment must be rejected. As this was the basis for the trial court's judgment in favor of

the Bank on Kohl's breach of contract claim, we must reverse that judgment and remand this matter for the entry of judgment in favor of Kohl and for an assessment of related damages. This disposition thus resolves the first three issues Kohl raises on appeal.

¶ 26 In his fourth issue on appeal, Kohl asserts that the trial court erred in failing to award damages for the neglect and waste of the property which occurred since the Bank took possession. The trial court refused to award such damages because it concluded (1) that Kohl breached the covenant of quiet enjoyment, and (2) it is "clear from the wording of [¶] 11(c) [of the lease] that the parties intended that, once abandonment occurred, the lease would terminate and the owner would retake the property in order to avoid the very damages [Kohl] now seeks." [9] (Trial Court Opinion, 4/16/03, at 7.)

¶ 27 As a result of its conclusion that Kohl had breached the covenant of quiet enjoyment, the trial court found inapplicable the decision in *Stonehedge Square Ltd. P'ship v. Movie Merchants, Inc.*, 552 Pa. 412, 715 A.2d 1082 (1998). In *Stonehedge Square*, our Supreme Court held, in a suit by a landlord for back rent following the tenant's abandonment of the lease premises, that "a non-breaching landlord whose tenant has abandoned the property in violation of the lease has no duty to mitigate damages." *Id.* at 417, 715 A.2d at 1084.

Because herein the trial court concluded that Kohl *had* breached the lease (by breaching the covenant of quiet enjoyment), it concluded the *Stonehedge Square* rule did not apply. As we have found that the trial court erred in finding that Kohl breached the covenant, however, the trial court's analysis cannot stand. Accordingly, on remand, we direct the trial court to reassess Kohl's claim for damages for the Bank's neglect and waste of the property, and the application of *Stonehedge Square*, in light of this opinion.

¶ 28 Finally, Kohl asserts that the trial court improperly excluded evidence pertaining to an alleged diminution in the value of his property *surrounding* the parcel subject to the ground lease as a result of the Bank's actions, which he asserts are damages properly recoverable in this action. Kohl has provided no authority, however, supporting an award of such damages in ejectment or breach of lease actions, and we are aware of none. Accordingly, we reject Kohl's final allegation of error.

¶ 29 For all the foregoing reasons, we reverse the judgment entered in favor of the Bank on Kohl's breach of lease count, and remand for the entry of judgment in favor of Kohl on this count, and for a determination and award of related damages consistent with this opinion. In all

---

9. Section 11 of the lease provides:

(11) *TERMINATION* This lease shall terminate upon the occurrence of any of the following:
(a) The expiration of the first term hereof without renewal by Lessee as herein provided.
(b) The expiration of the second term hereof.
(c) The abandonment of the premises by Lessee without first having sub-leased the premises as herein provided.
(d) Failure of the Lessee to pay the rental as herein provided for a period in excess of thirty (30) days from the date of written notice of non-payment given by Lessor to Lessee.
(e) The bankruptcy or insolvency of Lessee while in occupancy of the premises.
(f) Election by Lessee of its desire to terminate the lease at any time during the term hereof provided that notification be given to Lessor in writing not less than six (6) months from the date of termination.
(Lease, 7/16/79, at 4–5 (R.R. 4a–5a).)

other respects we affirm the judgment below.

¶ 30 Judgment **AFFIRMED** in part, **REVERSED** in part, and case **REMANDED**. Jurisdiction **RELINQUISHED**.

¶ 31 President Judge DEL SOLE files a Concurring and Dissenting Statement.

DEL SOLE, President Judge, Concurring & Dissenting.

¶ 1 I join the Majority in all respects save one. I conclude that, while the filing of the 1993 lawsuit may not have been done in "bad faith," it lacked sufficient probable cause of success so as to constitute a breach of the covenant of quiet enjoyment.

¶ 2 The 1993 action was premised on the averment that the lease was automatically terminated for failure to pay taxes. However, the lease excluded such a failure as a basis for automatic termination. The trial court found, based on evidence of record, that the 1993 litigation prevented the bank from marketing the property and liquidating the mortgage and loan. I cannot say this was error. Thus, I would affirm the decision of the trial court.[10]

---

10. Where the result is correct but for reasons not expressed by the trial court, an appellate court may affirm for the correct reasons.

*Commonwealth v. Singletary,* 803 A.2d 769 (Pa.Super.2002).