J-A13037-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| ERMALEA LAZARUS, | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| Appellee | : |
| v. | : |
| | : |
| DOUGH NATION PIZZA, LLC | : |
| AND MATTHEW GRANT HOLLEY, | : |
| | : |
| Appellants | : No. 2061 EDA 2018 |

Appeal from the Order Entered June 26, 2018
in the Court of Common Pleas of Bucks County
Civil Division at No(s): 2015-02879-0072

BEFORE:    SHOGAN, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:                **FILED AUGUST 27, 2019**

Dough Nation Pizza, LLC and Matthew Grant Holley (collectively, Tenant) appeal the verdict of $39,481.87, entered on June 26, 2018, against Tenant and in favor of Ermalea Lazarus[1] (Landlord) following a non-jury trial. We affirm.

The dispute arises from a commercial lease entered into between the parties on May 19, 2013 (Lease). The trial court set forth the factual and procedural history as follows.

> Tenant and Landlord entered into [the Lease] for a commercial pizza restaurant located at 7 East Bridge Street, New Hope Borough, Bucks County, Pennsylvania [(Property)]. The Lease was for a term of [5] years. Rent was due on the first day of each month.[5]

---

[1] Ermalea Lazarus's son and power of attorney, Arthur Lazarus, has always acted, and continues to act, on behalf of his mother in this case. ***See*** Trial Court Opinion, 10/3/2018, at 1 n.1.

*Retired Senior Judge assigned to the Superior Court.

_____

[5] Rent for the first year was $30,000 annually (or $2,500 monthly) and was to increase by three percent (3%) yearly. Tenant had a grace period of five (5) days from the first of the month to pay rent and then would be charged a late fee of five percent (5%). Tenant was responsible for maintaining and repairing the Property, including the heating and air conditioning equipment; Landlord was responsible for replacement of systems in the Property.

The Lease allowed Landlord to terminate the Lease or receive accelerated rent if Tenant failed to pay rent within [10] days of it being due.[6]

_____

[6] … [Among others, a]nother event of default under the Lease was: "abandonment, vacation or desertion of the [Property] or suspension of business at the [Property] for more than ten consecutive (10) days." [Lease, 5/19/2013, at ¶ 13(a)(3).]

***

**[] Right of Access to the Alley**

During the first year of the Lease, Tenant kept trash in an alley [(Alley)] between the Property and a neighbor, C.L. Lindsay's [(Neighbor)] property. The Neighbor owned the Alley and it was not a part of the Property. Beginning in May [] 2014, Neighbor did not want Tenant to keep trash in the Alley anymore. Neighbor eventually locked the gate to the Alley with a chain and lock, preventing Tenant from using it to store its trash.

Tenant began keeping its trash out front of the Property. On September 4, 2014, [New Hope] Borough sent a letter [to Landlord and Tenant] that Tenant's trash was violating Borough Codes.[18] On September 10, [2014,] the Borough [] followed up with an official Notice of Violation of a New Hope Borough Code.[19]

_____

[18] In 2004[,] the Property had been approved for a special exception use as a retail food shop. Approval of that special exception was based on a lease with Neighbor which granted access to the Alley as a place to store trash cans. The letter

advised Tenant and Landlord that, "[i]f for some reason, the adjacent alley leasing arrangement is no longer available, alternative arrangements for solid waste storage must be immediately developed." [N.T., 10/31/2017, at Tenant's Exh. 4 (Letter, 9/4/2014, at 1).]

[19] The Notice of Violation listed as a description of the corrective action required, "… you are hereby directed to provide daily municipal waste collection service or other remedy suitable to the Borough to resolve the violations cited herein." [N.T., 10/31/2017, at Tenant's Exh. 4 (Notice of Violation, 9/10/2014, at 2).]

Based on the imminent threat of fines, Tenant decided to store trash inside the Property. This led to rats inside the Property. Tenant called an exterminator who inspected the Property on September 11, 2014.[22] Tenant was closed for business for two or three days because of the rats.

_____
[22] According to Tenant, the exterminators could do nothing without access to the Alley, where they would have to put rat traps in order to exterminate them properly.

On September 13, 2014, a fire occurred in the Alley.[24] There was no interior damage to the Property, but firefighters "burst through" the Property's front door to search for a back exit to get to the locked Alley.[25] [After the fire,] Landlord secured the doorway with plywood and a padlock and left the key with a neighboring tenant for Tenant to retrieve. [Tenant's business] was not open for business again after that time.

_____
[24] The fire was caused by a short[] of exposed electrical wires on the roof of the Property. [Tenant's business] was closed at the time of the fire.

[25] Once inside the Property, firefighters discovered there was no back exit to the Alley.

**[] Dough Nation's Late Rent Payments and Magisterial District Court Action**

During the above-mentioned events, Tenant began remitting rent payments late. On February 27, 2014, Landlord filed a landlord-tenant complaint in a Bucks County magisterial district court. Landlord withdrew that complaint [without prejudice] after Tenant provided checks to catch up on rent. On May 7, 2014[,] Landlord re-filed the complaint after one of the checks bounced.

On May 19, 2014, Landlord and Tenant appeared for a landlord-tenant complaint hearing.[32] The parties entered into an agreement where an order of possession against Tenant would be pending in the magisterial district court. As long as Tenant paid its rent on time, Landlord would not execute said order.

_____

[32] Tenant brought a check for $5,750[,] to satisfy the rent through May [2014].

Tenant did not pay June's rent on time.[35] On July 11, 2014, Tenant submitted a payment of $5,000[,] for June and July [2014]'s rent.[36] [The rent for] August 2014[,] was not paid until September 4, 2014.[37]

_____

[35] Landlord's attorney sent Tenant a letter stating that Landlord would take appropriate steps to execute upon the pending order for possession if payment was not received promptly.

[36] June and July [2014]'s rent check was not the accurate amount under the Lease as the monthly rent increased by three percent after May 2014.

[37] August [2014]'s rent was for the inaccurate amount of [$2,500] instead of [$2,575], the appropriate amount under the Lease. Tenant never paid any late rent charges for these late payments as was required under the Lease.

Based on the fact that Tenant did not open for business after the September 13[, 2014] fire and lack of further rent payment, Landlord moved to evict Tenant by instating the pending order for possession. The magisterial judge signed the order for possession in favor of Landlord on September 17, 2014.

Once Tenant removed all of its equipment, Landlord began renovating the Property.[40] In April 2015, Landlord located a new tenant for the Property who moved in shortly after.

_____

[40] Landlord testified that there was a lot of damage[,] including rot under the floor from water dripping.

On April 15, 2015, Tenant [filed] a complaint against Landlord for breach of the Lease, breach of the implied covenant of quiet enjoyment, and fraud. On May 11, 2015, Landlord filed an answer with new matter and a counterclaim against Tenant for breach of [the] Lease.

On November 18, 2016, Landlord filed a motion for summary judgment. On February 6, 2017, Tenant filed a counter motion for summary judgment. The [trial court] denied and dismissed both motions for summary judgment.

On October 31, 2017, this matter proceeded to a [2] day non-jury trial. The [trial] court heard testimony from: (1) [] Holley; (2) Ronald Edwin Holley, Tenant's expert on [its] averred business losses; and (3) Arthur Lazarus.

During the trial, the [trial] court granted Landlord's motion for nonsuit on Tenant's [fraud claim] based on a lack of evidence…. Additionally, the [trial] court dismissed Tenant's claim for breach of the implied covenant of quiet enjoyment because Tenant did not establish the elements to satisfy a *prima facie* case.

On January 8, 2018, the [trial] court issued a verdict. The court awarded Landlord $39,481.87.

On January 29, 2018, Tenant filed a motion for post trial relief[, which the trial court denied on May 17, 2018]….[46]

_____

[46] On January 31, 2018, Landlord filed a praecipe to enter judgment on the January 8, 2018 verdict and the prothonotary's office entered the January 8, 2018 judgment. On February 19, 2018, Tenant filed a motion to strike the premature entry of judgment[,] which the [trial] court granted on May 17, 2018.

On June 26, 2018, the [trial] court re-issued the verdict against Tenant and for Landlord, awarding Landlord $39,481.87 for rent due under the remainder of the lease less the amount Landlord was paid by the new tenant in possession of the Property.

Trial Court Opinion, 10/3/2018, at 1-7 (capitalization and party designation altered; citations to the record and some footnotes omitted).

This timely-filed appeal followed. Both Tenant and the trial court complied with Pa.R.A.P. 1925.[2]

On appeal, Tenant sets forth two questions for our review.

A. Whether the trial court erred by not enforcing the parties' lease by its terms and the implied covenant of quiet enjoyment[.]

B. Whether the covenant of quiet enjoyment is breached first by loss of a necessary condition to operation of premises granted and then eviction.

Tenant's Brief at 3-4.

We apply the following standard of review to a nonjury trial verdict.

Our appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact

---

[2] We note that on July 17, 2018, the trial court ordered Tenant to file its statement pursuant to Pa.R.A.P. 1925(b) within 21 days. Tenant did not comply, filing its statement on August 10, 2018. However, "where the trial court addresses the issues raised in an untimely Rule 1925(b) statement, we need not remand but may address the issues on their merits." **Commonwealth v. Brown**, 145 A.3d 184, 186 (Pa. Super. 2016), *citing* **Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009) ("[I]f there has been an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal."). Instantly, the trial court's Rule 1925(a) opinion addresses the issues Tenant raises on appeal. **See** Trial Court Opinion, 10/3/2018, at 11-12. Accordingly, we will address the issues on their merits.

of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

The trial court, as the finder of fact, is free to believe all, part or none of the evidence presented. Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder.

*Gamesa Energy USA, LLC v. Ten Penn Ctr. Assoc., L.P.*, 181 A.3d 1188, 1191-92 (Pa. Super. 2018) (citations and quotation marks omitted).

In the case before us, Tenant argues that Landlord breached the terms of the lease and the covenant of quiet enjoyment because the Property was not fit for use as a restaurant once Tenant no longer had access to the Alley adjacent to the Property to store trash. Tenant's Brief at 16-29. Tenant claims that Landlord's failure to maintain a lease to the Alley or provide some alternate arrangement substantially interfered with his enjoyment of the Property. *Id.* at 24-25.

"[A] lease is in the nature of a contract and is to be controlled by principles of contract law. The interpretation of any contract is a question of

law and this Court's scope of review is plenary." ***Gamesa Energy USA, LLC***, 181 A.3d at 1192 (citations omitted).

In addition, we set forth the following principles relating to the implied covenant of quiet enjoyment.

> There is an implied covenant of quiet enjoyment in every lease of real property. The covenant is between lessor and lessee. It is breached when the lessee's possession is impaired either by acts of the lessor or those acting under the lessor or by the actions of a holder of a superior title. Any "wrongful act" of the lessor that interferes with the lessee's possession, in whole or in part, is a breach of the covenant of quiet enjoyment.

***Lichtenfels v. Bridgeview Coal Co.***, 531 A.2d 22, 25 (Pa. Super. 1987) (citations omitted).

Tenant relies on various boilerplate subsections of the Lease to support his argument that Landlord was in breach thereof. ***See*** Tenant's Brief at 19-22. Our review of the Lease does not reveal any reference to the Alley, nor does it contain any reference to any other lease or agreement between Landlord and Neighbor, or any other third party, relating to the Alley. Thus, we do not find any merit to Tenant's argument that Landlord was in breach of any express provision in the Lease.

Further, we agree with the trial court that Tenant's claim for breach of the covenant of quiet enjoyment fails because there was no wrongful act by Landlord. ***See*** Trial Court Opinion, 10/3/2018, at 11-12. As noted *supra*, the Neighbor owned the Alley and is the one who locked it and prevented Tenant's access. ***Id.*** at 12. The Lease did not provide Tenant access to the Alley, and

Landlord did not represent to Tenant that the Alley was part of the Property. Because Tenant's claim is based upon the conduct of a neighboring property owner, not Landlord, it cannot form the basis for a claim of breach of quiet enjoyment. **See Lichtenfels**, 531 A.2d at 25.

Moreover, Tenant's access to the Alley was restricted by the Neighbor in spring of 2014. However, Tenant did not notify Landlord at that time of any issue relating to trash storage, despite two magisterial district court proceedings brought by Landlord to collect late rent payments. Instead, Tenant waited until September 2014, to notify Landlord, which was after Tenant had received a letter from the borough and a notice of violation for improper trash storage. As the borough's notice so informed, Tenant had an alternative for trash disposal: daily municipal waste collection.[3] Tenant failed to make any such arrangement.

Additionally, the record demonstrates and Tenant admits that from nearly the outset of the Lease, Tenant was repeatedly in breach for failing to pay rent in full and on time. **See** Tenant's Brief at 9. As noted *supra*, after Landlord filed a second complaint seeking possession of the Property, the parties agreed at the second magisterial district court hearing in May 2014, that the court would issue a judgment of possession, but Landlord would not take action on it as long as Tenant paid rent and otherwise complied with the

---

[3] In addition, borough regulations permitted indoor storage of trash if certain conditions were met.

terms of the Lease. Thereafter, Tenant failed to pay rent on time for June, July, and August 2014, and failed to pay September 2014 rent at all. Tenant's failure to pay rent was unrelated to the Alley issue. Tenant testified that he failed to pay rent due to cash flow problems or accounting errors on his end. N.T., 10/31/2017, at 80-81. Tenant's claim that the restricted Alley access was a breach of the Lease and his quiet enjoyment of the Property strikes us as a belated attempt to justify his breach by late and unpaid rent. The fact remains that Tenant had the option of daily trash pick-up and chose not to make those arrangements.

For the foregoing reasons, we affirm the trial court's June 26, 2018 order entering judgment in favor of Landlord.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 8/27/19