## MUSTAFIZUR RAHMAN *vs.* FEDERAL MANAGEMENT CO., INC.

Middlesex. November 12, 1986. — March 27, 1987.

Present: GRANT, KAPLAN, & ARMSTRONG, JJ.

*Contempt. Damages,* Attorney's fees, Breach of covenant of quiet enjoyment. *Landlord and Tenant,* Quiet enjoyment, Eviction. *Summary Process.*

Where, in a civil contempt proceeding for alleged violation of a preliminary injunction, the defendant conceded that, if the judge accepted the plaintiff's testimony over that of the defendant's employee with respect to the employee's failure to act upon a certain matter at issue, the defendant could be found in violation of the injunction and where, after the case was argued to the judge on that basis, the judge believed the plaintiff's testimony on the point, the defendant was precluded from contending on appeal that the employee's failure to act was not in violation of the injunction. [704]

In a civil contempt proceeding, an award of attorney's fees to the prevailing party was proper. [704]

Where, in a civil contempt proceeding, nothing appeared in the judge's findings to support a conclusion that a summary process action commenced by a real estate management company against certain tenants in violation of a previously obtained preliminary injunction was born of malice or ill will, but rather, on the facts found, commencement of the proceeding appeared to be a case of simple inadvertence, and thus did not constitute a breach of the covenant of quiet enjoyment. [705-707]

CIVIL ACTION commenced in the Superior Court Department on April 21, 1983.

A contempt proceeding, commenced on December 3, 1984, was heard by *George W. Cashman,* J., sitting under statutory authority.

*Stephen A. Greenbaum* for the defendant.

*Patrick J. Horvath (Paul R. Collier, III,* with him) for the plaintiff.

ARMSTRONG, J. In 1983 tenants of the defendant's 504-unit apartment complex near Fresh Pond in Cambridge brought a

class action complaining of various abusive practices employed by the defendant in evicting tenants.[1] They were granted a preliminary injunction barring the defendant from proceeding with any new summary process action against members of the class in eight specified situations. An appeal from the order granting the injunction was later dismissed, apparently by stipulation. The principal action is still pending in the Superior Court.

In December, 1984, a complaint for civil contempt was brought in the names of two members of the tenant class alleging that the defendant had violated the preliminary injunction. The contempt action was tried before a judge other than the one who had granted the preliminary injunction, and judgment was entered under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), for both tenants, from which the defendant appealed. While the appeal was pending, one of the tenants reached a settlement with the defendant. The case is before us on the appeal of the defendant from the judgment in favor of the other tenant, the plaintiff Rahman.

The complaint, insofar as it related to Rahman, alleged that the defendant violated parts four and seven of the injunction when it served him with a summary process complaint and summons on or about November 17, 1984: part four, because Rahman had tendered all rent claimed to be due, and part seven, because the defendant assured Rahman that it would not be proceeding against him. The judge, in his memorandum of decision after trial, ruled that the defendant had violated part five of the injunction by bringing a summary process action "against . . . Rahman for nonpayment of rent despite the fact that [it was] unable to advise him of the source of

---

[1] A principal allegation was that the defendant, after commencing summary process actions against tenants for nonpayment of rent and after receiving the overdue rent from the tenants, would tell the tenants that the summary process actions would be dismissed, but would instead obtain default judgments and executions. Other allegations were of violations of HUD regulations, deceit, abuse of process, violations of the covenant of quiet enjoyment under G. L. c. 186, § 14, and violations of G. L. c. 93A.

the alleged arrearage."[2] The judge also ruled that "the natural and probable consequence of the defendant's violations of the [t]emporary [i]njunction was an interruption of the rights of . . . Rahman" and was thus (citing *Lowery* v. *Robinson,* 13 Mass. App. Ct. 982 [1982]) a breach of the covenant of quiet enjoyment. Following G. L. c. 186, § 14, the judge awarded Rahman three times the full monthly rent ($467), or $1,401, and he assessed an attorney's fee of $3,000.[3]

The facts found by the judge show that the eviction proceeding against Rahman originated in a clerical error. Rahman signed his lease and moved in on September 10, 1984. At the time of signing he paid an amount equal to the total of the first and last months' rent, or $934. Rent was billed on a calendar month basis, however, and the rent of $467 paid for the first month exceeded the rent due for twenty-one days' occupancy in September. It was thus agreed that, at the end of September, Rahman would pay a reduced amount for the October rent, and this amount was calculated to be $326.97. The rent records were computerized, and the computer, not having been told that the tenancy commenced September 10, calculated on the assumption that Rahman had owed a full month's rent for Sep-

---

[2] The three parts mentioned in the text barred "proceeding with any new summary process action . . . in which:

" . . . .

"(4) tenant has tendered all rent claimed to be due on or before the answer date together with interest and costs or the tenant has not been advised in writing of his right to do so, if the summary process action is for nonpayment;

"(5) the defendants are unable to advise the tenants, by reference to defendants' records, of the exact months and amounts which are claimed to be owing to defendants;

" . . . .

"(7) the defendants have advised tenants that defendants are not proceeding with any such summary process action; . . . ."

[3] General Laws c. 186, § 14, as amended by St. 1973, c. 778, § 2, provides that where a "landlord . . . directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant," he shall "be liable for actual and consequential damages or three months' rent, whichever is greater, and the costs of the action, including a reasonable attorney's fee." Rahman proved no actual damages other than emotional.

tember. It therefore registered a deficiency of $140.03 in the October rent, and this, in turn, generated a notice to quit which was received by Rahman in mid to late October, 1984.

What happened next was the subject of dispute. Rahman testified that he or his wife went immediately to the defendant's employee Maloney, who acknowledged that the notice to quit was erroneously issued and promised that he would take care of the problem. Maloney's version was that he was unaware of the problem until November 19, 1984, when he was approached by Rahman because he had just been served with the summary process complaint and summons. The defendant caused the summary process action to be discontinued shortly thereafter, prior to Rahman's filing the complaint for contempt in December.

With respect to the finding of contempt, the defendant makes a dual argument: first, that it cannot be found in contempt for actions having their origin in inadvertence rather than intentional wrongdoing (but see *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.,* 361 Mass. 35, 38 [1972]) and, second, that its actions and omissions did not fall squarely within paragraphs four or seven of the injunction (the theory of the complaint) or paragraph five thereof (which the judge found to have been violated). At trial, however, the defendant expressly conceded that, if the judge accepted Rahman's testimony over Maloney's with respect to the time when Rahman brought the error to Maloney's attention, the defendant was in violation of the injunction. The case was argued to the judge on this basis. The judge believed Rahman's testimony on the point. The defendant may not contend on appeal that Maloney's failure to act in October was not in violation of the injunction.

From the finding of contempt, it follows that the award of attorneys' fees was not in error, for attorneys' fees are a proper element of damages in a civil contempt proceeding. See, e.g., *Lyon* v. *Bloomfield,* 355 Mass. 738, 745 (1969); *Darmetko* v. *Boston Housing Authy.,* 378 Mass. 758, 763 n.7 (1979). All that is questioned with respect to the award of attorneys' fees is the defendant's liability therefor; the amount of that award is not challenged.

Whether the covenant of quiet enjoyment was violated is an independent question. The implied covenant is a promise that, during the term of his tenancy, the tenant shall not be disturbed in the enjoyment of the premises by the lessor or anyone claiming under him or by anyone claiming paramount title. *Foster v. Peyser,* 9 Cush. 242, 246 (1852). Hall, Massachusetts Law of Landlord and Tenant § 207 (4th ed. 1949). Schwartz, Lease Drafting in Massachusetts 3.8 at 61 (1961). It has been accepted as a general rule that an action to remove the tenant from the premises, whether brought by the landlord or by one claiming paramount title, does not constitute a breach of the covenant of quiet enjoyment if the action is terminated without dispossession of the tenant. See *International Trust Co. v. Schumann,* 158 Mass. 287, 291 (1893); Hall, *supra* § 91, at 94; Restatement (Second) of Property (Landlord and Tenant) § 4.3 comment b & illustration 12 (1977). At the time of *International Trust Co. v. Schumann,* an ouster was required before a tenant could claim on the covenant in an action at law. See *Callahan v. Goldman,* 216 Mass. 238, 239 (1913); contrast *Case v. Minot,* 158 Mass. 577, 585, 588-589 (1893); *Winchester v. O'Brien,* 266 Mass. 33, 36-38 (1929). The ouster rule is no longer followed: a tenant may sue for breach of the covenant, whether he abandons the premises or remains in possession. *Charles E. Burt, Inc. v. Seven Grand Corp.,* 340 Mass. 124, 127, 130 (1959). *Darmetko v. Boston Housing Authy.,* 378 Mass. at 761 n.4. Nevertheless, we find no authority for a rule that the mere commencement of proceedings for eviction, without more, violates the covenant.

The covenant of quiet enjoyment is violated by acts that amount to "serious interferences with [the] tenancy." *Simon v. Solomon,* 385 Mass. 91, 102 (1982). *Leardi v. Brown,* 394 Mass. 151, 167 (1985). A violation of the covenant connotes acts by the landlord (or by his sufferance) that "substantially 'impair the character and value of the leased premises.' " *Winchester v. O'Brien,* 266 Mass. at 36, quoting from *Brande v. Grace,* 154 Mass. 210, 212 (1891). An eviction proceeding, particularly where it is unsuccessful or is aborted, cannot be said to impair the character and value of the leased premises as those words are used in the cases.

The decisions that "have imposed liability whenever the 'natural and probable consequence' of a landlord's action was interruption of the tenant's rights," *Simon* v. *Solomon,* 385 Mass. at 102, quoting from *Westland Housing Corp.* v. *Scott,* 312 Mass. 375, 381-383 (1942), have, in our view, no application to the present case. As there explained, those decisions represent a qualification of the general rule that a landlord's acts or omissions do not violate the covenant of quiet enjoyment unless "done by the landlord with the intention and effect of depriving the tenant of the enjoyment of the demised premises . . . ." *Id.* at 381. See the reformulation of the rule in *Blackett* v. *Olanoff,* 371 Mass. 714, 716 (1977), where cases are collected. The common element in those cases is that the actions or failures of the landlord affected the demised premises physically and impaired their value, as by cutting off heat, light, or services. *Leardi* v. *Brown,* 394 Mass. at 167, suggests that a landlord's claims, although unjustified, impinging on the tenant's peace of mind rather than on the value of the premises, will not be drawn within the sweep of that rule.

It has been held in other States that commencement of an eviction proceeding, at least where done, as here, without malice, does not violate the covenant of quiet enjoyment. See *Nate* v. *Galloway,* 408 N.E.2d 1317 (Ind. Ct. App. 1980); *Kuiken* v. *Garrett,* 243 Iowa 785 (1952); *Roseneau Foods, Inc.* v. *Coleman,* 140 Mont. 572 (1962); *El Paso Natural Gas Co.* v. *Kysar Ins. Agency, Inc.,* 98 N.M. 86 (1982); *D.M. Dev. Co.* v. *Osburn,* 51 Or. App. 207 (1981); contrast *Guntert* v. *Stockton,* 43 Cal. App. 3d 203 (1974); appeal after remand, 55 Cal. App. 3d 131 (1976). If the rule were otherwise, a landlord would violate G. L. c. 186, § 14, merely by initiating unsuccessful eviction proceedings. Such a rule would be inconsistent with the generally applauded "policy to permit access to the courts without fear of penalty should the claim be found deficient." *D.M. Dev. Co.* v. *Osburn, supra* at 209. Like other actions, a summary process action, honestly brought for reasons thought to be valid, may founder on adverse resolution of genuinely disputed facts. More than most actions, it

may founder on procedural technicalities.[4] Here there is nothing in the judge's findings which would support a conclusion that the summary process action against Rahman was born of malice or ill will; rather, on the facts found, it appears to be a case of simple inadvertence, originating in sloppiness. The error may have violated the preliminary injunction, but it did not, in our view, constitute a breach of the covenant of quiet enjoyment.[5]

The judgment is to be modified by striking the paragraph (numbered 2) awarding Rahman damages for breach of the covenant of quiet enjoyment. As so modified, it is affirmed.

*So ordered.*

---

[4] See, e.g., G. L. c. 186, § 13 (action cannot be brought until the expiration of thirty days or, if longer, the rent payment period, from the receipt by the tenant of the notice to quit); Uniform Summary Process Rule 2(b) (service to be made between seven and thirty days prior to the entry day); *Mastrullo* v. *Ryan,* 328 Mass. 621, 623-624 (1952) (inadvertent waiver of notice to quit, and reinstatement of tenancy, by a later acceptance of rent).

[5] We are not certain, from his brief, whether Rahman makes a further argument that the defendant may be found to have been in breach of the covenant of quiet enjoyment due to what he alleges was the particular susceptibility of himself and his wife to emotional distress as a result of the uncertainty and tension caused them by the eviction proceeding. Without suggesting that such a contention would be well founded in any event, we note that the Rahmans' unusual emotional distress, although having some support in the evidence, is not reflected in the judge's findings.