912 A.2d 237

**J. Carl KOHL**

v.

**PNC BANK NATIONAL ASSOCIATION, William
C. Schmidt and Marilyn F. Schmidt**

**Appeal of PNC Bank National Association.**

Supreme Court of Pennsylvania.

Argued Dec. 5, 2005.

Decided Dec. 27, 2006.

Michael J. Donohue, Scranton, for PNC Bank Nat. Ass'n, appellant.

Thomas J. Maloney, Bethlehem, for J. Carl Kohl, appellee.

William C. and Marilyn F. Schmidt, for William C. Schmidt and Marilyn F. Schmidt, appellees.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice BAER.

■ We granted allowance of appeal in this dispute between J. Carl Kohl, a landowner ("Landowner"), and PNC Bank ("Bank"), which eventually became Landowner's tenant, to consider the test applied by the Superior Court in its determination that Landowner did not breach the implied covenant of quiet enjoyment by pursuing litigation against Bank. The Superior Court concluded that "a suit by a landlord which substantially impairs a tenant's possessory interest in a leasehold, brought in bad faith, maliciously, or otherwise without probable cause and primarily for a purpose unrelated to seeking legal redress, constitutes a breach of the landlord's

covenant of quiet enjoyment." *Kohl v. PNC Bank Nat'l Ass'n.*, 863 A.2d 23, 31 (Pa.Super.2004). Applying that test to the instant case and concluding that the record did not support the trial court's determination of a breach of the covenant of quiet enjoyment, the Superior Court reversed the judgment entered in favor of Bank and remanded for entry of judgment in favor of Landowner and assessment of damages. After review, we adopt the test espoused by the Superior Court but reverse the court's holding that the record did not support the determination of a breach of the covenant of quiet enjoyment based on bad faith litigation. Instead, we remand to the trial court to allow the parties to develop the record regarding the issue of bad faith litigation and for further proceedings based upon the trial court's determination of that issue.

Although this case involves a convoluted fact pattern discussed in full below, we begin by reproducing the apt summary presented by the trial court:

> When [the original lessees] defaulted on their Lease and filed bankruptcy, [Landowner] was left with an empty building and [Bank] was left with a bad loan authorized by its predecessor. Although approximately ten years have passed since the occurrence of their business disappointment, the landowner and the bank have not attempted any cooperative effort to cut their losses. Instead, they have assumed intransigent positions through almost ten years of litigation[,] which has only increased their respective losses from this transaction.

Trial Ct. Slip Op., 12/4/02, at 5.

The case involves a tract of land in Monroe County that is improved with a 10,000 square foot commercial building. In 1979, Landowner, the appellee in the case at bar, entered into a ninety-nine year lease with the predecessors of the lessees relevant to the current dispute. The 1979 lease (the Lease) contained the following provisions regarding the payment of taxes and termination:

(5) *TAXES* All Taxes, if any, imposed upon the land comprising the leased premises and the building and improvements erected thereon shall be the obligation of the Lessee.

* * * *

(11) *TERMINATION* This lease shall terminate upon the occurrence of any of the following:

(a) The expiration of the first term hereof without renewal by Lessee as herein provided.

(b) The expiration of the second term hereof.

(c) The abandonment of the premises by Lessee without first having sub-leased the premises as herein provided.

(d) Failure of the Lessee to pay the rental as herein provided for a period in excess of thirty (30) days from the date of written notice of non-payment given by Lessor to Lessee.

(e) The bankruptcy or insolvency of Lessee while in occupancy of the premises.

(f) Election by Lessee of its desire to terminate the lease at any time during the term hereof provided that notification be given to Lessor in writing not less than six (6) months from the date of termination.

Lease, 7/16/79, at 2–5.

In 1990, the leasehold was assigned to William and Marilyn Schmidt, nominal appellees in the case at bar (Lessees), who obtained a mortgage on the leasehold interest of $800,000 from Bank, the litigating appellant herein.[1] In addition, Landowner, Bank, and Lessees entered into a Nondisturbance and Attornment Agreement containing the following relevant provisions:

H. Bank desires to be assured of continued rights to utilize the Premises in the event Bank succeeds to the interests of [Lessees] under the Loan between Bank and [Lessees],

1. Lessees in fact obtained the mortgage from First Eastern Bank, which was acquired by Defendant/Appellant PNC Bank, National Association, while the litigation at bar was progressing through the appellate system. For ease of discussion, we will refer to both entities as Bank.

either by way of foreclosure, assignment in lieu of foreclosure, or otherwise.

\* \* \* \*

3. *Nondisturbance.* In the event that Bank succeeds to the interests of the [Lessees] under the Lease Agreement, Bank and [Landowner] hereby agree to be bound to one another under all of the terms, covenants, and conditions of the Lease Agreement; accordingly, from and after such event Bank and [Landowner] shall have the same remedies against one another for breach of the Lease Agreement just as if Bank had been the original Lessee under the terms and conditions of the Lease Agreement, provided, however, Bank shall not be:

(i) liable for any act or omission of [Lessees] or any prior tenant; or

(ii) subject to any offsets or defenses which [Landowner] might have had against [Lessees]; or

(iii) bound by any amendment or modification of the Lease Agreement made subsequent to the date of this instrument without Bank's prior written consent.

Nondisturbance and Attornment Agreement, 9/28/90, at 2–4.

In June 1992, Landowner filed a complaint against Lessees seeking approximately $33,000 for the unpaid taxes, termination of the Lease, and possession of the property based on the claim that Lessees breached the Lease by non-payment of taxes.[2] In October 1992, after Lessees defaulted on the mortgage but prior to a decision in Landowner's action, Bank confessed judgment in ejectment and took possession of the property. In December 1992, Bank filed a mortgage foreclosure action against Lessees.[3] Without joining Bank, Land-

---

**2.** The certified record before this Court does not reference the June 1992 filing date. However, the parties do not contest that a complaint was filed by Landowner against Lessees or that the trial court entered a default judgment in Landowner's favor on January 8, 1993.

**3.** We note that upon a mortgagor's default, a mortgagee has three remedies available: an action at law on the mortgage debt, an action to gain possession, and an action of mortgage foreclosure. *See* 22 Standard Pennsylvania Practice 2d § 121:3. The two remedies at issue in this case are not mutually exclusive because the actions differ in their

owner then filed for default judgment in its action against Lessees seeking the unpaid taxes and possession of the property, which was entered on January 8, 1993, thus putatively terminating the Lease between Landowner and Lessees.[4] A week later, on January 15, 1993, Bank obtained default judgment in its mortgage foreclosure action against Lessees.

In October 1993, Landowner commenced a declaratory judgment action against Bank seeking a declaration that Bank had no interest in the leasehold due to the Lessees' failure to pay property taxes since 1991 in violation of the Lease and the resulting judicial termination of Lessee's leasehold interest. (1993 Litigation) The case turned on whether Landowner's default judgment against the Lessees was valid despite Landowner's failure to join Bank. If the Lessees' failure to pay taxes automatically terminated the lease prior to Bank's taking possession, then Landowner did not have to join Bank because Bank could never have taken possession of the land. Otherwise, the default judgment was arguably invalid for Landowner's failure to join Bank, the party in possession of the land. *See Bannard v. New York State Natural Gas Corp.,*

objects where the purpose of foreclosure is to effect a judicial sale of the real estate and the purpose of ejectment is to gain possession of the property. *See id.* § 121:3, 121:26.

**4.** As discussed *infra*, in relation to Landlord's litigation against Bank in 1993, the trial court later declared the termination of the Lease invalid because non-payment of taxes could not terminate the Lease automatically, and because default judgment was not proper under the facts of this case where Landowner failed to join Bank as a party when Bank was in possession of the property, and thus an indispensable party in an ejectment action under Pennsylvania law and when the Nondisturbance and Attornment Agreement required Landlord to include Bank in the proceedings. The certified record in this case does not provide all the details relevant to the court's decision. While some documents included in the reproduced record suggest that Bank was not the party in possession at the time of the filing of the complaint and that Bank had notice of Lessee's default, there is no debate that Landowner failed to include bank as a party, which the trial court found to be required by paragraph H of the Nondisturbance and Attornment Agreement, set forth above. In any event, at this juncture, the validity of the decision in the 1993 litigation is neither in question nor before us. Rather, our grant of review concerns whether Landowner's litigation in 1993 and the present litigation violated Bank's right to quiet enjoyment of the property.

404 Pa. 269, 172 A.2d 306, 310 (1961) (requiring notice to the party in possession of land prior to any ejectment action).

In January 1996, the trial court entered a verdict in favor of Bank and against Landowner, finding that non-payment of taxes did not result in an automatic termination prior to Bank taking possession under the terms of the Lease, and that the default judgment was invalid under caselaw and the Nondisturbance and Attornment Agreement due to Landowner's failure to join Bank before taking it.

Landowner appealed, and the Superior Court affirmed. The court held that the trial court properly determined that the Lease was never terminated because (1) it did not terminate automatically under the terms of the Lease and (2) the Lease did not terminate by default judgment because Landowner failed to join Bank. We concluded the first round of litigation in July 1997, when we denied Landowner's petition for allowance of appeal.

Shortly after our denial, Landowner commenced a second action in September 1998 (1998 Litigation), which is the action currently before this Court. In the new action, Landowner sought ejectment against Bank (and the Lessees) for continuously failing to pay taxes notwithstanding thirty days' notice from Landowner, the declaration of bankruptcy by the Lessees, and abandonment of the property.[5] The complaint also asserted breach of the contract for failure to pay taxes. Landowner additionally filed a *lis pendens*[6] against Bank's interest in property. Bank counterclaimed, asserting that Landowner breached the implied covenant of quiet enjoyment and the Nondisturbance and Attornment Agreement. Bank argued that the ongoing litigation impeded Bank's ability to

5. Landowner alleged that Bank abandoned the property because no tenant occupied the property for three years prior to the filing of the complaint. 1998 Litigation Complaint at 7.

6. "[T]he effect of a *lis pendens* is not to establish actual liens upon the properties affected nor has it any application as between the parties to the action themselves; all that it does is to give notice to third persons that any interest they may acquire in the properties pending the litigation will be subject to the result of the action." *Dice v. Bender*, 383 Pa. 94, 117 A.2d 725, 726–27 (1955).

exercise its property rights under the long-term lease by restricting its ability to market the property. At the time of the trial in the 1998 Litigation, the property had not been leased for nearly seven years, had deteriorated, and had been vandalized. As a result, it allegedly had no rental value. Moreover, property taxes had not been paid since 1993, with a total delinquency in 2001 of $262,011. The property had been scheduled for a tax sale, but the property received no bids. A judicial sale was scheduled for April 16, 2003.[7]

In deciding the case, the trial court first expressed dismay that Landowner was again seeking termination of the lease for non-payment of taxes, which the prior court had determined could not result in automatic termination of the lease.[8] The

7. The parties in the present appeal fail to inform the Court whether this sale occurred. It is apparent from a recently filed Petition for Allowance of Appeal that the property interest in the ground lease was sold at a judicial sale by the Tax Claim Bureau in May 2005 to Nations First Realty Corp. *Kohl v. Nations First Realty Corp., 814 MAL 2006.* The judicial sale did not relate to Kohl's fee simple interest in the property, which was listed at a separate tax identification number. In the Nations First litigation, the trial court noted that the litigation between Kohl and Bank resulted in the termination of the ground lease upon abandonment of the property by PNC. Given the termination of the ground lease, the court determined that the property interest in the ground lease merged with Kohl's fee simple interest in a greater piece of property that consisted of nine acres and included the lesser area covered by the ground lease. On appeal to the Superior Court, Nations First contested the trial court's conclusion that Kohl had a fee simple ownership interest in the whole property and the conclusion that Nations First could not recover any monies for improvements to the property. The Superior Court affirmed in an unpublished decision, 2040 E.D.A. 2005. Nations First has limited its petition for allowance of appeal to the recovery of improvements, and accordingly, has not maintained its challenge to Kohl's ownership of the property.

We do not speak in this opinion to the merits of the Nations First litigation but merely note it does not effect this litigation, which addresses the rights and obligations of Kohl and Bank at a point prior to the judicial sale. We additionally observe that the courts deciding the Nations First litigation apparently were unaware of the pending appeal of Bank's litigation currently before this Court. We encourage parties to be forthcoming to courts about related litigation.

8. It appears that the trial court's dismay is misplaced given that the original trial court merely held that the Lease could not terminate *automatically* because of non-payment of taxes, not that non-payment could never result in termination.

court however accepted Landowner's other basis for termination, noting that the Lease did provide for automatic termination in the event of "abandonment of the premises by Lessee without first having sub-leased the premises." Lease, Paragraph 11(c). Consequently, the court found in favor of Landowner on the ejectment count. The court found in favor of Bank on the breach of contract claim (non-payment of taxes), concluding that Landowner "continually breached the implied covenant of quiet enjoyment of the premises by his persistent litigation which precluded [Bank] from marketing the property." Trial Ct. Slip Op., 12/4/02, at 6–7. The court continued, "A *lis pendens* indexed against a commercial property is an effective death knell. Therefore we decline to reward [Landowner] for his litigious interference with [Bank's] equity by awarding damages for unpaid taxes." *Id.* at 7. The court additionally noted that Landowner had never paid the taxes and thus was not entitled to reimbursement.

Landowner subsequently filed motions for post-trial relief. In its opinion in response to the post-trial motions, the trial court noted that it found credible the testimony of Bank's officer regarding the impact of the 1993 Litigation. The officer averred that no one "in their right mind" would consider purchasing either the property or the leasehold interest when the property was subject to a lawsuit that threatened to extinguish the mortgage and leasehold, effectively leaving Bank's interest unsecured and consequently unmarketable. Tr. Ct. Slip. Op., 4/16/03, at 5 (citing Notes of Testimony (N.T.), 10/28/02, at 125–26). Moreover, the court "determined that banks are generally in the business of selling their interests in leaseholds, and the litigation impaired this right." Trial Ct. Slip Op., 4/16/03, at 5. Although the court acknowledged that "the effect on the bank's *physical* possession was slight," it concluded that "the litigation paralyzed the bank's *constructive* possession." *Id.* (emphasis in original). Concluding that Landowner acted in bad faith, the court rejected Landowner's assertion that he had a right to bring the litigation following the Bank's failure to pay taxes and abandonment of the property:

We cannot find any such right was being asserted as the [1993] litigation began only a few months after the bank took possession. Also, the judgment of the Superior Court in prior litigation between the parties plainly states that [Landowner] was seeking declaratory judgment for a determination that [Bank's] lease was void because it was terminated prior to the Bank's succession. In view of the fact that the litigation was incessant, unrelated to the Bank's performance, and virtually meritless, *we think it is reasonable to infer bad faith on the part of [Landowner]* and thus, a wrongful act. As stated in the verdict, a *lis pendens* indexed against a commercial property is an effective death knell. As such, the litigation significantly impaired [Bank's] free use of the property to the extent [Landowner] breached the implied covenant of quiet enjoyment.

*Id.* at 6 (emphasis added, citation to record omitted).[9] The court thus denied Landowner's breach of contract action for non-payment of property taxes finding that the Landowner's

9. As is relevant to our holding, we note that the trial court never made a factual finding that Landlord's actions constituted bad faith but rather merely inferred bad faith as a reason to justify its determination of a breach of the covenant of quiet enjoyment. This inference was first stated in its opinion following post-trial motions, thus preventing the parties from challenging the conclusion before the trial court as fact finder. Indeed, we emphasize that the trial court previously limited discussion of Landlord's motivations. Specifically, the court prevented Bank from cross-examining Landlord regarding the purpose of the 1993 Litigation:

> Wasn't the purpose of that lawsuit to terminate the [Bank's] tenancy and return that property to you?
> [Kohl]: The tenancy [sic] of the lawsuit that I did was simply for one reason. You know, here I sit with the [P]roperty. [The Bank] has taken over, and now [the Bank] does not want to pay their [sic] taxes, and what am I supposed to do, leave everything go? No, I was just protecting my rights.
> [Counsel for the Bank]: Well, wasn't the purpose of that lawsuit and—
> [Trial court]: Let me interrupt here. I have your question. I have your answer. Let's move on. I don't need a debate between the two of you. He's given me his version. I have a record of the pleadings. I can make a judgment, can't I? Is there any reason to pursue this? I'll have the record, the Complaint, what it says. I'm sure he signed some verification for it. I've heard him say what he intended, but you fellows, I assume, have different opinions as to what that was.

Reproduced Record at 325a.

162

breach of the implied covenant of quiet enjoyment relieved Bank of its obligations under the Lease.

The court also denied damages resulting from Bank's abandonment of the property because the court reasoned that Landowner was responsible for any damages following abandonment. The court distinguished this case from our decision in *Stonehedge Square Limited Partnership v. Movie Merchants, Inc.*, 552 Pa. 412, 715 A.2d 1082 (1998), where we held that a non-breaching landlord has no duty to mitigate damages when a tenant abandons a property in violation of a lease. According to the trial court, *Stonehedge Square* did not control this case because Landowner breached the covenant of quiet enjoyment and because the terms of the Lease specifically contemplated that the lease would terminate automatically upon Bank's abandonment and responsibility of the property would return to Landowner.[10]

On appeal, the Superior Court reversed in part and affirmed in part. The court devoted the bulk of its opinion to the trial court's holding that Landowner breached the implied covenant of quiet enjoyment. The court presented a detailed discussion of the concept, noting that the covenant exists in any lease of real property and is breached by the occurrence of "any wrongful act of the lessor that interferes with the lessee's possession, in whole or in part." *Kohl*, 863 A.2d at 27 (citation omitted). The court observed that an impairment of quiet enjoyment does not need to be total to constitute a breach, but

10. While we ultimately remand for further proceedings, we nonetheless acknowledge the court's laudable attempt to resolve this protracted dispute by, in essence, splitting the difference between the parties, both of whom bear some responsibility for the litigation that allowed the property to sag into ruination. However, we note several inconsistencies in the opinion and the order. Most significantly, while the court found that Landowner's breach absolved Bank of its responsibility to pay taxes, it failed to explain why the same analysis would not absolve Bank of compliance with the terms of the Lease relieving Bank of upkeep responsibility subsequent to abandonment. Additionally, while the court's conclusion that Landowner breached the implied covenant of quiet enjoyment is central to its opinion, the attached order states that the court found in favor of Landowner with respect to Bank's counterclaim, which sought damages for lost rents and profits as a result of the breach of the implied covenant of quiet enjoyment.

rather that the "utility of the premises must be substantially decreased by the landlord's interference with a right or privilege which is necessary to the enjoyment of the premises." *Id.* The court cited Pennsylvania caselaw supporting the conclusion that both constructive and actual eviction may constitute a breach of the covenant of quiet enjoyment.

The court then considered whether litigation may constitute constructive eviction sufficient to breach the implied covenant of quiet enjoyment. The court discussed the only Pennsylvania case in which this issue has been addressed previously, *Raker v. G.C. Murphy Co.*, 358 Pa. 339, 58 A.2d 18 (1948), analyzed in detail *infra*, and concluded that it "stands for the proposition that *wrongful* litigation impairing a tenant's possessory interest can breach the covenant of quiet enjoyment." *Kohl*, 863 A.2d at 30 (emphasis in original).

The Superior Court also surveyed the law of our sister courts regarding litigation's potential impact on the implied covenant of quiet enjoyment:

> The majority of cases from other jurisdictions which address this issue are in accord, and focus on whether the litigation was brought in bad faith, maliciously, or without probable cause. These cases hold either (1) that ejectment actions, or other suits for possession, brought in bad faith, maliciously, or without probable cause can constitute a breach of the covenant of quiet enjoyment, or (2) have left the issue open by finding that in the absence of malice related to the commencement of such proceedings, no breach has occurred.

*Id.* (collecting cases).[11]

In developing its own test, the court considered the need to protect a litigant's free access to the courts under Article 1,

---

**11.** *See Guntert v. City of Stockton,* 55 Cal.App.3d 131, 126 Cal.Rptr. 690 (1976) ("The arbitrary and unreasonable notice of termination violated the lessor's implied obligation to abstain from interference with the tenant's use and enjoyment of the premises."); *Kuiken v. Garrett,* 243 Iowa 785, 51 N.W.2d 149, 159 (Iowa 1952) (noting that "a landlord has a right to attempt to oust his tenant, *if he thinks he has just grounds therefor;* and in such case he is not to be held liable for damages if he fails," but, otherwise, malice may be found) (emphasis in original)

Section 11 of the Pennsylvania Constitution.[12] The court noted that the law does not punish parties who avail themselves of the courts except in very limited circumstances manifesting bad faith in order to avoid the potential chilling effect on individuals' willingness to seek legal redress. Accordingly, the court enunciated its test:

> In line with *Raker, supra,* and following the reasoning of the majority view expressed in the cases ... from other jurisdictions, we hold that a suit by a landlord which substantially impairs a tenant's possessory interest in a leasehold, brought in bad faith, maliciously, or otherwise without probable cause and primarily for a purpose unrelated to seeking legal redress, constitutes a breach of the landlord's covenant of quiet enjoyment. We find this strikes a proper balance between a policy allowing substantially unfettered

(superseded by statute on other grounds regarding the standard for recovery of punitive damages); *Rahman v. Federal Mgmt. Co., Inc.,* 23 Mass.App.Ct. 701, 505 N.E.2d 548, 551 (1987) (collecting cases and concluding "that commencement of an eviction proceeding, at least where done, as here, without malice, does not violate the covenant of quiet enjoyment" in case where landowner's litigation failed as a result of inadvertence or sloppiness); *Roseneau Foods, Inc. v. Coleman,* 140 Mont. 572, 374 P.2d 87 (1962) ("A suit brought by a landlord to obtain possession of the premises does not constitute a breach of a covenant of quiet enjoyment unless the suit was instituted maliciously and without probable cause."); *D.M. Dev. Co. v. Osburn,* 51 Or.App. 207, 625 P.2d 157 (1981) ("The general rule is that the mere commencement of an action to evict does not constitute a breach of [the covenant of quiet enjoyment] at least in the absence of some showing that the lawsuit was groundless and maliciously brought." (citations omitted)). The court notes that at least two courts have focused their analysis on the actual removal of possession from the tenant, citing *Weisman v. Middleton,* 390 A.2d 996 (D.C.1978) and *Bowers v. Sells,* 125 Ind.App. 324, 123 N.E.2d 194 (1954).

12. § 11. Courts to be open; suits against the Commonwealth

All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. Art. 1, § 11.

access to our courts with a tenant's rights to undisturbed possession.

*Kohl,* 863 A.2d at 31.

In applying this test to the facts in the case at bar, the court agreed with the trial court that the litigations substantially interfered with Bank's possessory interest but disagreed with the trial court's conclusion of bad faith. The court first concluded that the 1998 Litigation could not be deemed in bad faith given that the abandonment claim was resolved in favor of Landowner. In considering the significance of the *lis pendens* to the trial court's finding of bad faith, the panel noted that Landowner lodged the *lis pendens* in the meritorious 1998 Litigation, rather than the unsuccessful 1993 Litigation.

After considering the absence of bad faith in the 1998 Litigation, the court next considered whether Landowner brought the earlier 1993 Litigation in bad faith, and concluded that he did not. Although noting that the claims were not meritorious, the court found "no indications that [the 1993 Litigation] was brought maliciously or without probable cause." *Kohl,* 863 A.2d at 32. The Superior Court acknowledged the arguably incessant quality of the litigation but noted the distinctions between the 1993 Litigation, which was unrelated to the Bank's performance, and the 1998 Litigation, which was directly related to the Bank's actions in abandoning the property and failing to pay taxes. Accordingly, the court reversed the trial court's denial of recovery on Landowner's breach of contract claim, which the trial court had based upon its finding that Landowner breached the covenant of quiet enjoyment. Instead, the court remanded for an assessment of damages on the breach of contract claim. The Superior Court also remanded for assessment of damages due to Bank's abandonment of the property, which the trial court in part denied based on its finding of a breach of the covenant of quiet enjoyment.[13]

13. The Superior Court did not speak to the trial court's second rationale for denial of damages for abandonment based on the Lease's

Then–President Judge Del Sole filed a brief concurring and dissenting opinion in the matter. He concluded that while the first litigation had not been filed in bad faith, it nonetheless lacked probable cause, and thus constituted a violation of the covenant. Judge Del Sole observed that Landowner's first litigation lacked probable cause in that it sought a declaration that Bank did not obtain possession because the Lease terminated automatically due to Lessees' failure to pay taxes, where the Lease clearly did not so provide.

Before this Court, Bank asserts that the Superior Court erred by focusing its test on the intent of the landowner in bringing an action. Bank argues that the body of law addressing breaches of the covenant of quiet enjoyment focuses not on the landowner's intent but rather on whether the terms of the lease permitted the landowner's actions and whether the actions substantially impaired the tenant's possession of the leased property.

Bank next contests the Superior Court's reliance on *Raker* to support the bad faith aspect of the court's test. Instead, Bank reads *Raker* to support a test based on the permissibility of a landowner's actions under the lease, rather than on the maliciousness of conduct.[14] Thus, Bank asserts that bad faith need not be shown to establish a breach of the covenant of quiet enjoyment. Applying its version of the holding of *Raker* to the facts at bar, Bank contends that Landowner violated the covenant of quiet enjoyment simply because Landowner sought a remedy—automatic termination for non-payment of taxes—that was not permitted under the Lease and the resulting 1993 Litigation paralyzed Bank's ability to utilize its property rights.

provision for automatic termination and the resulting return of the responsibility of the property to the Landowner.

**14.** In brief, *Raker* involved a landowner who secured a mortgage from a third party bank prior to leasing a property to a tenant. Upon their inheritance of the property, the landowner's heirs attempted to circumvent the lease and evict the tenant by acquiring the mortgage, foreclosing upon it while it remained in their father's estate, buying the property at a sheriff's sale incident to the foreclosure, and then claiming their rights were paramount to those of the lessee based upon the mortgage's priority in time. *Id.* at 19–20.

Alternatively, assuming *arguendo* the propriety of the Superior Court's test, Bank asserts that the court improperly disregarded the evidentiary conclusions of the trial court, which found that Landowner acted in bad faith in bringing the two lawsuits.[15] Bank then details the evidence it contends supports the trial court's finding the Landowner acted in bad faith: (1) the 1993 Litigation seeking automatic termination of the lease for the Lessees' non-payment of taxes even though the Lease did not support such a remedy and the Non–Disturbance and Attornment Agreement absolved Bank of any liability for acts of the prior tenants; (2) Landowner's filing of the 1998 Litigation the day after receipt of a letter from Bank to Landowner acknowledging responsibility for the taxes as of this Court's denial of review of the 1993 Litigation; (3) the reliance on the non-payment of taxes as the basis for the 1998 Litigation despite the determination in the 1993 Litigation that non-payment of taxes could not result in termination of the Lease; (4) the facts at the time of the filing of the complaint did not justify a claim of abandonment based solely on the lack of tenants for three years, which Bank contends resulted from its inability to market the property as a result of the pendency of the first litigation; and (5) the two litigations seeking to terminate the leasehold rendered the property unmarketable. Based on these assertions, Bank contends that the evidence supports a finding of bad faith on the part of Landowner as found by the trial court.

Finally, Bank contends that the Superior Court erred in applying its new test to this case rather than reserving the test for prospective application. Accordingly, Bank urges that the establishment of a new test, at a minimum, calls for a remand to the trial court for a hearing on the issue of bad faith. Bank argues that a remand is especially important in this case because the trial court cut short its attempt to cross-examine Landowner regarding his purpose for filing the lawsuits. Bank cites our decision in *Lamp v. Heyman*, 469 Pa.

---

**15.** We observe that the Superior Court concluded that the record supported the trial court's finding that the 1993 Litigation substantially infringed Bank's ability to market the property and thus substantially interfered with Bank's possessory interest. *Kohl,* 863 A.2d 23.

465, 366 A.2d 882 (1976), as evidence of this Court's practice of applying tests prospectively in fairness to plaintiffs who may have relied upon an old rule.

Conversely, Landowner argues that the Superior Court did not construct a new test for a breach of the implied covenant of quiet enjoyment, but rather relied on established precedent requiring a demonstration of a "wrongful act of the lessor that interferes with the lessee's possession." Brief for Landowner at 11 (quoting *Branish v. NHP Prop. Mgmt., Inc.,* 694 A.2d 1106, 1107 (Pa.Super.1997) (holding covenant breached by landowner's restriction on who could visit tenant despite contrary provision in lease)). Although Landowner acknowledges that the covenant of quiet enjoyment is breached when a landowner's actions substantially decrease the utility of the lessee's possession of the leased property, Landowner notes that the covenant is not absolute and may be limited by the terms of the lease. *See Checker Oil Co. of Del., Inc. v. Harold H. Hogg, Inc.,* 251 Pa.Super. 351, 380 A.2d 815, 818 (1977).

Landowner asserts that a breach cannot be deemed to occur merely because a landowner pursues litigation that impairs the lessee's possession, but rather must be limited to litigation conducted in bad faith such that it constitutes "wrongful" conduct. To rule otherwise, Landowner maintains, would prevent landowners from enforcing their contractual rights under leases. Landowner contends that this test protects landowners' right of access to the courts to enforce leases and protect property rights while also protecting tenants' right to be free from malicious and vexations litigation. Moreover, Landowner relies on the Superior Court's analysis of other jurisdictions who have adopted similar standards for breach of the covenant of quiet enjoyment in cases of landowner litigation. In addressing this Court's decision in *Raker,* our only case involving the effect of litigation on the tenant's right to quiet enjoyment, Landowner stresses this Court's focus on the wrongful conduct of the landowners who exploited the situation for their own profit rather than abiding by the terms of the lease.

Landowner argues that the Superior Court correctly determined that he brought neither litigation in bad faith. Landowner contends that the 1993 Litigation seeking declaratory judgment, while unsuccessful, was nonetheless not brought in bad faith but failed merely because Landowner did not join Bank in the initial default judgment action against the Lessees. Likewise, Landowner asserts that he brought the 1998 Litigation in good faith to enforce the terms of the Lease regarding abandonment of the property and payment of taxes, and in fact, prevailed. Moreover, he notes that the *lis pendens* was filed in 1998 after six years of non-payment of taxes by the Lessees and Bank, which threatened Landowner's title to the leased property. Finally, he contends there is no need for a remand because the test does not establish new law but rather relies upon the established precedent requiring "wrongful action" by a landowner. He notes that the parties fully argued, and the Superior Court correctly determined, the issue of Landowner's alleged bad faith.

 As stated by the Superior Court, there is a dearth of law in the Commonwealth regarding when litigation may constitute a breach of the covenant of quiet enjoyment. However, there is no shortage of law regarding violations of the covenant in general.[16] First, the covenant is implied in all leases. *See Raker*, 58 A.2d at 19. Moreover, "it is settled in this state that any wrongful act of the landlord which results in an interference of the tenant's possession, in whole or in part, is an eviction for which the landlord is liable in damages to the tenant." *Kelly v. Miller*, 249 Pa. 314, 94 A. 1055, 1056 (1915); *see 2401 Pennsylvania Ave. Corp.*, 489 A.2d at 739 (finding breach of covenant of quiet enjoyment where tenant prevented from taking possession of leased premises by affir-

16. As this appeal arises from a non-jury trial, "the Court is bound by the trial judge's findings of fact unless those findings are not based on competent evidence. Conclusions of law, however, are not binding on an appellate court whose duty it is to determine whether there was a proper application of law to fact by the lower court." *2401 Penna. Ave. Corp. v. Federation of Jewish Agencies of Greater Phila.*, 507 Pa. 166, 489 A.2d 733, 736 (1985). On pure questions of law, such as the determination of the appropriate test to apply, our review is plenary. *See Buffalo Township. v. Jones*, 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002).

mative act of lessor in extending lease to prior tenant). In *Kelly*, this Court held that the covenant was breached when the landowner closed several openings joining the leased premises, a theater, with other adjoining premises that were owned or otherwise leased by the tenant. The court found that by obstructing access to the adjoining premises, which were not encompassed in the relevant lease, the landowner denied the tenant direct access to rooms necessary to the functioning of the theater such as storage rooms, dressing rooms, and bathrooms. We concluded that these actions interfered with the tenant's possession of the leased premises even though they did not evict the tenant from the theater building covered by the lease.

From *Kelly*, the Superior Court has concluded repeatedly that a breach of the covenant can be demonstrated through constructive eviction, if the tenant establishes that the utility of the premises has been substantially decreased. *See Branish*, 694 A.2d 1106 (finding breach of covenant of quiet enjoyment where landowner threatened eviction if tenant's boyfriend visited tenant at the property); *Jonnet Dev. Corp. v. Dietrich Indus., Inc.*, 316 Pa.Super. 533, 463 A.2d 1026, 1033 (1983) (noting that earlier cases required physical disposition or actual disturbance but that "the great weight of authority now is that a constructive eviction" will suffice); *Checker Oil Co. of Del.*, 380 A.2d at 819 (holding landowner's erection of guardrail blocking access from public highway to tenant's gasoline station constituted breach of covenant of quiet enjoyment because the alteration deprived the tenant of a "valuable feature of the plot" and "substantially reduced its utility"); *Pollock v. Morelli*, 245 Pa.Super. 388, 369 A.2d 458 (1976) (collecting cases and finding breach of covenant where landowner erected mini-mall around formerly easily accessible dry-cleaning establishment because the structural alteration substantially decreased the utility of the property). However, a cloud over the title, by itself, does not constitute sufficient impairment absent some other actual impairment. *See Rittenhouse v. Barclay White Inc.*, 425 Pa.Super. 501, 625 A.2d 1208 (1993) (declining to find breach where landowner's failure to

secure proper occupancy permits did not interfere with tenant's occupancy of leased premises); *Derrickheim Co. v. Brown*, 305 Pa.Super. 173, 451 A.2d 477 (1982) (distinguishing oil and gas lease law from standard landowner and tenant law, under which cloud over title does not constitute a breach of the covenant of quiet enjoyment).

Unlike the cited cases, the asserted breach in this case does not involve a structural change resulting in a diminishment of the utility of the leased premises, an overt restriction placed on the use of property, or actual eviction, but instead involves litigation, which Bank asserts substantially infringed the utility of the property by limiting Bank's ability to market its leasehold. The parties and the Superior Court agree that the only case applying the covenant to a landowner's legal actions against a leasehold is this Court's 1948 decision in *Raker*, 358 Pa. 339, 58 A.2d 18.

In *Raker*, the landowner created a mortgage on the property with a bank. Years later, the landowner entered into a twenty-one-year lease with a tenant for a portion of the building. At the same time, the landowner entered into a ten-year agreement with the lessee and the bank whereby the bank agreed that prior to taking any foreclosure action it would first offer to assign the mortgage to the lessee and, moreover, agreed not to foreclose the mortgage, assign it, or dispossess the lessee so long as the lessee complied with the terms of the lease. The lessee abided by all the terms. Approximately four years later, upon landowner's death, landowner owed bank a substantial sum, secured by the relevant mortgage. The bank agreed with the heirs to a reduction and payment of the indebtedness, and an assignment of the mortgage to two of the landowner's sons ("Sons"). Sons then instituted a foreclosure action against landowner's estate, without making the lessee a party to the action. Following acceptance of service by the heirs and judgment against the estate, Sons purchased the property at a sheriff's sale. Asserting a right prior to the lessee, they disaffirmed the lease.

After litigation, this Court concluded, "[i]t is obvious that when title to the property descended to [landowner's heirs]

they could not have repudiated the lease which [landowner] had made." *Id.* at 19. Accordingly, when the heirs inherited the reversionary interest in the property, they too were bound by the covenant of quiet enjoyment.

> Since the [heirs] could not, prior to their acquisition of the mortgage have disaffirmed the lease and evicted the tenant, they cannot accomplish the same result by the transparent devise of acquiring the mortgage, foreclosing it, buying in the property, and then claiming that their rights were paramount to those of the lessee because of the original priority of the mortgage over the lease in point of time. That all the proceedings they instituted were designed for the sole purpose of freeing themselves from the [lessee's] lease is so obvious as to preclude the necessity of discussion. Having paid off the mortgage to the [b]ank there could have been no other reason for their failure to have it cancelled and satisfied of record instead of taking it over by way of assignment and then foreclosing it against themselves.

*Id.* at 20. This Court held that the heirs were liable for the full value of the leasehold due to the breach of the covenant of quiet enjoyment.

Accordingly, while this Court did not frame its review specifically in terms of bad faith, our holding focused not on the conclusion that the actions would not have been proper under the lease, but rather on the improper purpose implicit in the Sons' convoluted attempt to free themselves of their obligations under the lease. We do not find our decision in *Raker* contrary to the Superior Court's test restricting the finding of breaches of the covenant of quiet enjoyment relating to landowner litigation to those cases "brought in bad faith, maliciously, or otherwise without probable cause and primarily for a purpose unrelated to seeking legal redress." *Kohl,* 863 A.2d at 31. Instead, it merely demonstrates that cases involving such conduct constitute a breach of the covenant.

While Bank urges us to conclude that the Superior Court erred by focusing on the intent of the landowner rather than the effect on the tenant, the Superior Court's test plainly does consider the litigation's effect on the tenant. Indeed, the bad

faith element of the test applies only to a "suit by a landlord *which substantially impairs a tenant's possessory interest* in a leasehold." *Kohl,* 863 A.2d at 32 (emphasis added). On the other hand, if we were to focus *exclusively* on the effect on a tenant, one could argue that the covenant could be breached where the result of the litigation impairs the rights of a tenant even if the landowner's litigation results in a judgment against the tenant. We cannot permit the covenant of quiet enjoyment to crowd out even meritorious litigation. Accordingly, the Superior Court appropriately required more than mere infringement of the tenant's rights.

We next turn to the question of how to evaluate the propriety of the landowner's actions. Established precedent regarding a breach of the covenant of quiet enjoyment requires a "wrongful" act of the landowner. *See Kelly,* 94 A. 1055. Whether this litigation is wrongful, however, is considerably less quantifiable than the affirmative intrusions, actual and constructive, illustrated by the above-cited cases. Bank urges us to view the term broadly to include any litigation that is "wrong,"—i.e., any litigation seeking a remedy not supported by the lease or the factual situation. This interpretation fits prior cases considering actions by landowners resulting in structural alterations or other overt impediments to occupancy or enjoyment of the leased premises, where the inquiry need not reach the tenor of the conduct of the landowner. *See, e.g., Kelly,* 94 A. 1055; *2401 Pennsylvania Ave. Corp.,* 489 A.2d at 739. Conversely, Landowner urges us to adopt the Superior Court's test limiting the term to the subset of such cases, embodied by *Raker,* where a landowner pursues a "wrong" remedy with full knowledge of the litigation's lack of merit merely to harass the tenant.

As have many of our sister states, *see supra* note 11, we find that the first meaning paints with too broad a brush. While the meaning would encompass those cases that are brought maliciously, it would also penalize landowners who pursue litigation with a good faith belief that their complaint presents a meritorious argument, even if it strains the current confines of the law. Such an interpretation imposes too heavy a

burden on a landowner to ascertain whether his or her complaint will be deemed to present a winning argument. To require that a landowner be "right" to avoid breaching the covenant of quiet enjoyment would potentially infringe a landowner's constitutional right of access to courts and impede the orderly development of the law.

We find far more salutary the solution articulated by the Superior Court, which it distilled from our decision in *Raker*. We conclude that to show "wrongful conduct" in the context of landowner litigation requires a demonstration that suit has been "brought in bad faith, maliciously, or otherwise without probable cause and primarily for a purpose unrelated to seeking legal redress." *Kohl*, 863 A.2d at 31.

Turning to the case at bar, we conclude that this test need not be limited to prospective application because it is entirely consistent with this Court's prior holding in *Raker*. However, we cannot affirm the Superior Court's application of the test in this case based on its determination that the record did not support the trial court's inference of bad faith. Instead, we note that the trial court's inference in its opinion in response to post-trial motions and its limitation of the Bank's attempt to explore the motivations of Landlord in filing the litigation, see *supra* at 243, n. 9, did not allow the necessary development of the record. Accordingly, we reverse the decision of the Superior Court holding that the record did not support the determination of a breach of the covenant of quiet enjoyment based on a finding of bad faith and remand to the trial court to allow development of the record by the parties and for further proceedings following the trial court's determination of whether Landlord breached the covenant of quiet enjoyment.

Chief Justice CAPPY, Justices CASTILLE, NEWMAN and EAKIN join the opinion.

Justice NIGRO did not participate in the consideration or decision of this matter.

Justice SAYLOR files a concurring and dissenting opinion.

Justice SAYLOR, concurring and dissenting.

I agree with the majority that the Superior Court articulated the correct legal standard, which follows naturally from *Raker v. G.C. Murphy Co.*, 358 Pa. 339, 58 A.2d 18 (1948), and appropriately balances the need for access to the courts with a tenant's right to undisturbed possession. *See* Majority Opinion at 174, 912 A.2d at 251. For the reasons articulated by the Superior Court, however, I would additionally conclude that Kohl did not act in bad faith. *See Kohl v. PNC Bank Nat'l Assoc.*, 863 A.2d 23, 32–33 (Pa.Super.2004). Accordingly, I would affirm the order of the Superior Court. I therefore respectfully dissent from the portion of the majority opinion remanding the case to the trial court for further proceedings.