NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-756

ONE NORTH OF BOSTON LLC

vs.

DHIREN THAKKAR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff (landlord) brought this action to evict the defendant (tenant) from an apartment for nonpayment of rent. The tenant filed counterclaims for breach of the warranty of habitability and the covenant of quiet enjoyment.  After a jury-waived trial in the Housing Court, the judge found in favor of the landlord for unpaid rent and in favor of the tenant on his counterclaims.  The landlord appeals, arguing the judge erred in ruling that the landlord breached the warranty of habitability and the covenant of quiet enjoyment.  We affirm.

Background.  We summarize the judge's findings of fact relevant to this appeal, supplemented with undisputed facts from the record.  See Allison v. Eriksson, 479 Mass. 626, 627 (2018).

The parties signed a one year lease which began on October 14, 2022, and ended on October 13, 2023.  The rent was $2,670, due at the first of each month.

Upon moving in, the tenant noticed water damage on the kitchen flooring, and that the "3-layer flooring by the washing machine" was completely rotted and the top layer was "puckering up."  Approximately two weeks after moving in, the tenant sent an e-mail message to the landlord's management with his signed "Notice of Condition," which noted the damage on the floor and that "at least one [of the hardwood floors] is completely rotted."  A leasing agent thereafter contacted the tenant, and, after a series of communications, a work order was "opened up" in February 2023.  Someone came to look at the floor sometime after that, but the damage was not fixed.[1]

On June 26, 2023, the tenant sent a demand letter to the landlord requesting that the floor be repaired.  In the letter,

_____

[1] In November 2022, the tenant showed the landlord's maintenance team that the hot water heater was leaking brown liquid; the team patched it rather than replace it.  In February 2023, the tenant's hot water heater stopped working.  On Sunday, February 19, 2023, the tenant notified the landlord via an online service request.  The heater was removed and replaced two days later, on Tuesday, February 21, 2023.  Although the tenant raised this issue in his counterclaims, and the judge concluded that it was a breach of the warranty of habitability, the damages awarded to the tenant were based on the landlord's delay in repairing the kitchen floor, because they were greater than the damages warranted by the brief delay in repairing the hot water heater.

the tenant detailed an incident in which his sock got caught in the rotted flooring. The day after the tenant mailed the letter, Caitlin Bishop (Bishop), the landlord's senior property manager, sent an e-mail message to the tenant discussing the work that needed to be done in the apartment. Bishop suggested the flooring work could be completed on June 30, 2023, but the tenant was not available on that date, so they discussed rescheduling. On July 6, 2023, the landlord sent a letter to the tenant advising him the repair of the floors would take place on July 19, 2023. After this communication, the tenant began speaking directly with Bishop's regional manager.

In July 2023, before the floor had been repaired, the tenant contacted the city of Chelsea's inspectional services department (ISD). ISD conducted an investigation on July 21, 2023, and found violations for, among other things, the damage to the flooring. On August 1, 2023, Bishop sent another letter to the tenant advising him that a full floor replacement would be completed on August 9, 2023. She also explained that because the entire kitchen floor would be replaced, the tenant's property would be moved into his bedroom during the repair. The tenant objected to moving his possessions and also refused to consent to having his property moved to an off-site storage unit. The tenant eventually proposed a repair date of August

3

16, 2023, and the repair was completed on that date. ISD conducted a reinspection on August 17, 2023, and found the violation for the damaged flooring had been corrected.

The tenant did not pay rent in July 2023. The landlord served a notice to quit to the tenant on July 7, 2023. The landlord commenced this summary process action on August 14, 2023.

On the basis of these facts, the judge concluded that the landlord had proven damages in the amount of $13,350 for unpaid rent. However, the judge also concluded the tenant proved his counterclaims for a breach of the warranty of habitability and a breach of the covenant of quiet enjoyment. The judge found "no credible evidence supporting any other counterclaim or defense of the [t]enant." The judge concluded that the tenant was entitled to $8,010 in damages -- three times his monthly rent. Subtracting this amount from the $13,350 to which the landlord was entitled, the judge determined that the landlord was entitled to $5,340, plus interest and costs. Finally, the judge ordered that if the tenant paid this amount within seven days, judgment for possession would enter for the tenant. The tenant made payment within the seven-day period.

Final judgment entered on January 16, 2024. On the same day, the landlord submitted a "Motion for Clarification and/or

4

Reconsideration" of the judge's order.  On February 16, 2024, the judge issued a memorandum and order denying the landlord's motion.  The landlord appeals.[2]

Discussion.  The landlord argues that the judge erred in concluding that he materially breached the implied warranty of habitability and the covenant of quiet enjoyment.  "On review of a jury-waived proceeding, we accept the judge's findings of fact unless they are clearly erroneous. . . .  We review the judge's rulings on questions of law de novo" (citation omitted).  South Boston Elderly Residences, Inc. v. Moynahan, 91 Mass. App. Ct. 455, 462 (2017).

1. Breach of warranty of habitability.  "The existence of a material breach [of the warranty of habitability] will be a question of fact to be determined in the circumstances of each case."  Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 200

---

[2] The landlord entered his notice of appeal on January 29, 2024.  The judge denied the motion for reconsideration on February 16, 2024, and the landlord did not file a subsequent notice of appeal.  Because the landlord did not file a new notice of appeal after the denial of the motion for reconsideration, he did not comply with Mass. R. A. P. 4 (a), as appearing in 481 Mass. 1606 (2019).  However, we may nevertheless decide the appeal where the concerns underlying rule 4 (a) are not implicated; that is, "no action on the appeal had yet been taken before the motion for reconsideration was decided."  Roch v. Mollica, 481 Mass. 164, 165 n.2 (2019).  The appeal has been briefed by both parties and neither party has raised this issue.  We therefore choose to exercise our discretion to decide the appeal.

(1973). "Where a tenant has proved a breach of the warranty of habitability, he is entitled to damages that can offset a landlord's claim of unpaid rent." South Boston Elderly Residences, Inc., 91 Mass. App. Ct. at 462. The landlord does not dispute the floor defects underlying the tenant's counterclaims or the timeframe in which they were repaired. Rather, the landlord disputes the judge's ruling that these defects were sufficiently "material" to constitute a breach of the covenant of quiet enjoyment and the implied warranty of habitability warranting damages. "The question is how much the defects reduced the value of the residence." Id.

The judge was entitled to consider several factors in determining whether the landlord breached the warranty of habitability; for example, the length of time the defects persisted, whether and when the landlord had notice, and the difficulty of resolving the defects. See Jablonski v. Casey, 64 Mass. App. Ct. 744, 746 (2005). We discern no error, much less clear error, in the judge's application of these factors. The evidence supported the judge's finding that the tenant notified the landlord of the rotted flooring on October 20, 2022, when the tenant sent his signed notice of condition. Likewise, the evidence supported the judge's finding that the landlord did not replace the floors until August 16, 2023. The judge permissibly

6

inferred that the landlord was aware of the condition nine and one-half months before making repairs.[3]

Additionally, the evidence supported the judge's finding that the condition was not just a technical violation of the State sanitary code but created a health and safety risk by affecting the tenant's ability to safely traverse within his unit. Accordingly, we discern no basis to disturb the judge's ultimate ruling that the landlord's lengthy delay in repairing the flooring breached the warranty of habitability: "what should have been a minor inconvenience for a limited period of time became a larger issue as time progressed because of the [landlord]'s inaction." See Goreham v. Martins, 485 Mass. 54, 63 (2020) ("The warranty of habitability is not intended to punish landlords for misbehavior but rather to ensure that tenants receive what they are paying for: a habitable place to live").

2. Covenant of quiet enjoyment. A landlord violates the covenant of quiet enjoyment through "acts or omissions [that]

---

[3] As noted above, Bishop testified, without contradiction, that when she learned of the flooring problem on June 28, 2023, she moved quickly to schedule a repair, and the tenant contributed at least some of the delay from that point until the date of the repair, August 16, 2023. We note that Bishop's efforts predated the tenant's involvement of ISD. Nevertheless, the judge's findings are still supported by the landlord's undisputed delay of more than eight months in attempting to repair the flooring.

7

impair the value of the leased premises." Cruz Mgt. Co. v. Thomas, 417 Mass. 782, 789 (1994).  In order to prevail on a claim for breach of the covenant of quiet enjoyment, a tenant must show there was a "serious interference[] with [the] tenancy . . . that substantially impair[s] the character and value of the leased premises" (quotations and citation omitted).  Rahman v. Federal Mgt. Co., 23 Mass. App. Ct. 701, 705 (1987).  The tenant must also establish that the landlord was on notice of the defect and failed to remedy it.  See Al-Ziab v. Mourgis, 424 Mass. 847, 851 (1997).  "In analyzing whether there is a breach of the covenant, we examine the landlord's conduct and not his intentions."  Doe v. New Bedford Hous. Auth. 417 Mass. 273, 285 (1994).  The key inquiry is whether there was a "serious interference with [the] tenancy," id., and if so, whether it was a "natural and probable consequence of what the landlord did, what he failed to do, or what he permitted to be done" (citation omitted).  Id.

Here, the judge found sufficient evidence that the landlord was on notice of the damage to the flooring on October 20, 2022, but failed to remedy that damage until mid-August 2023.  While it may be true that the landlord had tried to repair the floors starting in late June 2023,[4] and was delayed due to discussions

---

[4] See note 3, supra.

over scheduling, the landlord offered no reasonable justification for the eight months' delay, from November 2022 through June 2023, in addressing the condition.  See Cruz Mgt. Co., 417 Mass. at 788-790.  As the judge aptly observed, the landlord could have provided any number of temporary solutions while awaiting the total floor replacement to mitigate the danger presented by the rotting floor.  Instead, due to the landlord's "cavalier attitude,"[5]  this issue lingered for at least eight months, becoming a "serious interference[] with [the] tenancy" that "substantially impair[ed] the character and value of the leased premises" (quotation and citations omitted).  Rahman, 23 Mass. App. Ct. at 705.  We therefore affirm the

---

[5] We defer to the judge's finding that the landlord's management team was dismissive of and condescending to the tenant's claims during the trial, which supported an inference that the landlord's delay in initiating repairs stemmed from its own negligence.  See Andover Hous. Auth. v. Shkolnik, 443 Mass. 300, 306 (2005) ("we give due regard to the judge's assessment of the witnesses' credibility").

judge's ruling that the landlord breached the covenant of quiet enjoyment.

Judgment entered January 16, 2024, affirmed.

By the Court (Vuono, Henry & Wood, JJ.[6]),

Clerk

Entered:  July 11, 2025.

---

[6] The panelists are listed in order of seniority.